Christopher B. MOORE, Appellant,

v.

STATE of Indiana, Appellee.

No. 484S117.

Supreme Court of Indiana.

June 10, 1986.

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., and Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of murder, I.C. § 35–42–1–1(1). A jury tried the case. Appellant received a fifty year sentence.

Appellant raises two contentions of error: (1) whether the trial court erred in excluding the testimony of several of his witnesses: (2) whether the trial court erred in limiting his cross-examination of a police officer.

Even though the sufficiency of evidence to convict is not challenged, an understanding of the major events from the record which support the determination of guilt is necessary in dealing with the allegations of error presented. On December 28, 1981, appellant Moore, Gary Rexroad, and the victim Gregory Robbins drove to Muncie, Indiana from Moraine, Ohio. All three were part of a larger combination that had been engaged in illegal drug dealing for several years. The combination held Robbins responsible for the loss of drugs having a significant value.

On the day they drove to Muncie, plans were made to kill Robbins and Rexroad told appellant to do it. When they arrived in Muncie, they contacted Sam Satterfield. Under the pretext of test driving a jeep, they drove out into the country. Rexroad and Satterfield rode in the jeep. Appellant and Robbins followed them in Robbins' car. At one point, the jeep and the car stopped, and Rexroad managed to give appellant a

gun, and then this small caravan proceeded down the road again.

A short while later, the cars stopped for a second time. On this occasion appellant emerged from the car and fired a single shot. Rexroad then took the gun from appellant and shot Robbins six or seven times. They dumped Robbins' body in the Mississinewa River, and later they returned to Ohio.

Appellant gave three statements to the police during the day of August 5, 1983, and gave his own live testimony at trial, and on each occasion described his role and the roles of Rexroad and Satterfield in the killing. On all four occasions, the description of the roles of Rexroad and Satterfield is the same, that is, Rexroad with Satterfield at his side, fired many shots into the victim, killing him. On all four occasions the description of his own role is the same, except for the fact that in one pre-trial statement and in the trial statement, appellant's shot did not strike and wound the victim. In the other two pre-trial statements, the victim called out in pain and was suffering after his shot was fired.

## I

In order to bolster his defensive position, appellant produced four witnesses to describe the physical and mental abuse to which he was subjected by the combination. Their proposed testimony is revealed in the offers of proof. The trial court sustained a prosecution objection on the basis of relevancy as to three, ruling that their testimony was mostly hearsay and related to events occurring after the killing took place. The trial court sustained in part a like objection to the testimony of the fourth, but ruled that her testimony describing appellant's mistreatment occurring before the killing took place would be received.

█ These rulings, like all others made by the trial court, are considered presumptively valid on appeal, and it is the burden of the party appealing to establish their legal invalidity. *Reilly v. Robertson* (1979), 266 Ind. 29, 360 N.E.2d 171. The

rulings must be regarded as supported in large measure by the hearsay determination, the integrity of which is not questioned. The rulings rest in lesser measure upon the determination that evidence of the mistreatment of appellant by the stronger members of the combination, after the killing took place, was irrelevant. In dealing with the issue of relevance in *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634, 643, we quoted authority on the subject.

"[T]he most acceptable test of relevance is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence?* McCormick, Evidence § 185 at 437. In Indiana 'evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight.' *Thomas v. State* (1968), 251 Ind. 76, 80, 238 N.E.2d 20, 22."

The inference which appellant desired to have the jury draw from the excluded testimony of his later mistreatment is that his trial version of events was true and that he did not strike the victim with the single shot. To this end the testimony was irrelevant. Fear engendered by threats and mistreatment from the combination following the killing might rationally supply appellant with a motivation to diminish the roles of Rexroad and Satterfield in his statements. However that did not occur. Instead they were described in all four statements as full and active participants in the killing and maximally culpable. Therefore, any fear engendered by such threats, if existing, would fail to shed light on appellant's decision to give differing descriptions of his own role.

## II

█ Appellant argues that the trial court erred in limiting his cross-examination of Detective Kelso. The subject of the contested portion of the cross-examination concerned the special precautions the police had taken to protect witness Satterfield and appellant from Rexroad who was at large at the time of the trial. Defense

Counsel elicited such testimony in order to show that appellant acted out of fear during the crime and during subsequent statements to the police. The pertinent part of the record is set forth here:

Q. Are you keeping Sanford Satterfield under any special protection:

A. Yes, sir.

Q. And why?

A. Because of his—because of his testimony and his information on this case we are afraid that somebody is going to try to do him harm.

Q. Who would do him harm?

A. ... Generally, probably the members of this organization whether it be the drug organization or Rexroad or the Outlaw Motorcycle Gang.

Q. Okay, Now, you felt it necessary to ask the Judge to set up special protection for this trial, is that correct?

A. That's correct.

Q. And why is that?

A. Because information from Moraine, Ohio and other sources indicated that Sanford Satterfield's life could be in danger during this trial.

Q. Okay. And what about Christopher Moore?

A. His name was never specifically mentioned but we generally assumed that that could possibly happen also.

Q. Okay. And have you taken any special precautions to protect him?

A. Yes.

Q. What have you done?

At this point, the State objected on the basis that the question was irrelevant and immaterial to the issues at trial. The trial court sustained the objection, but it left open the possibility that the ruling could be reconsidered after the tape of appellant's confession had been played. The State then played appellant's taped statement and appellant's videotaped statement. Subsequently, the State rested. Appellant did not seek reconsideration.

We do not discern how the trial court's ruling impinged upon appellant's substantial rights. It is clear that defense counsel was able to elicit from Detective Kelso on cross-examination the fact that security precautions were taken in order to protect witness Satterfield and appellant from Rexroad and the combination. From this testimony, the jury could have made the desired inference. However, legitimate security purposes require that the precise nature of the precautions remain undisclosed so that the precautions cannot be thwarted by the persons the precautions are designed to impede. The fact that such precautions had been taken, and the reasons for so doing, satisfied appellant's interest in the subject and disclosure of the precautions' details would not have added appreciably to this argument.

This conviction is affirmed.

GIVAN, C.J., and PIVARNIK, SHEPARD and DICKSON, JJ., concur.