Sarah CABANAW, Appellant–Petitioner,

v.

Bruce CABANAW, Appellee–Respondent.

No. 53A04–9408–CV–341.

Court of Appeals of Indiana,
Fourth District.

March 31, 1995.

Thomas A. Berry, Thomas A. Berry & Associates, Bloomington, for appellant.

Robert C. Price, Price & Runnells, Bloomington, for appellee.

## OPINION

RILEY, Judge.

Petitioner–Appellant Sarah Cabanaw (Sarah) appeals from the trial court's determination that it had the authority to modify its previous child custody and visitation order.

We affirm.

### ISSUES

Sarah raises three issues for our review which we consolidate and rephrase as: Did the trial court err by finding that Indiana retained jurisdiction to modify its custody and visitation order?

### FACTS

Sarah and Bruce Cabanaw (Bruce) were granted a divorce by the Monroe Circuit Court on February 12, 1986. Sarah was awarded custody of the three minor children: Dylan Cabanaw, born August 29, 1979, Tyler Cabanaw, born on April 23, 1983, and an older child who was emancipated in 1993 and thus is not the subject of this action. By the time the divorce was granted, Sarah and the children had moved to Florida in September, 1985. Since the divorce, Sarah and Bruce have utilized both Indiana and Florida[1] courts to raise additional questions of custody and visitation. A summary of the proceedings is as follows:

11–12–86 In Indiana, Bruce files a petition for emergency temporary custody modification which is granted and a hearing is set for 12/1/86 to determine custody.

11–14–86 The Florida Court grants Sarah's temporary restraining order.

11–21–86 In Florida, Bruce and Sarah reach an agreement (the 1986 Agreement) for extended visitation which gives Bruce temporary custody of the children until 6–4–87. The Agreement attempts to address the jurisdictional issue for future proceedings. The Florida court

---

1. The Monroe Circuit Court shall be referred to as the Indiana Court; the Circuit Court of Flori- da, Eighth Judicial Circuit in and for Alachua County as the Florida Court.

approves the Agreement and explicitly states that it does not reach the jurisdictional issue.

12–16–86  The Indiana Court dissolves the emergency temporary custody modification order and approves the 1986 Agreement.

2–23–88  In Indiana, Sarah petitions to settle a dispute involving support and insurance.  The parties reach an agreement in Indiana on 7–25–88.

8–6–93  In Indiana, Bruce petitions to modify custody, asking for custody of Dylan and Tyler.

8–30–93  In Indiana, Sarah files a motion to dismiss Bruce's petition for lack of jurisdiction.

On the same day, Bruce files a motion to dismiss based on Sarah's objection to jurisdiction.

9–1–93  In Florida, Bruce files a preliminary motion, asking the Florida Court to determine jurisdiction, as provided in the 1986 Agreement,[2] and to send the cause back to Indiana.  In the alternative he asks that for custody of the Dylan and Tyler.

9–24–93  In Florida, the parties settle their differences and the Florida Court enters a consent order modifying custody and visitation.  After specifically deferring the jurisdictional issue to another day, the Florida Court states that "[t]he parties consent to the jurisdiction of this Court in Florida *only* for purposes of entering this Consent Order." (R. at 85) (emphasis in original).

10–4–93  The Indiana Court files a copy of the 9–24–93 consent order.

2–8–94  In Florida, Bruce motions to compel Sarah to comply with discovery.

2–10–94  In Florida, Sarah petitions to modify custody, asks the court to rescind the 9–24–93 consent order and return Dylan to Florida.

3–7–94  In Florida, Bruce motions to dismiss Sarah's petition.

3–30–94  The Florida Court dismisses Sarah's petition with prejudice because the parties voluntarily dismissed the action on 10–9–87.

4–7–94  In Indiana, Bruce petitions to reinstate the modification action.

4–13–94  In Indiana, Sarah objects to Bruce's petition asking the Indiana Court transfer the cause to Florida.

4–15–94  In Indiana, Bruce petitions for emergency temporary custody to enable Dylan to finish the school year in Indiana.  Sarah objects and the Indiana Court grant's Bruce's petition on 4–18–94.

6–8–94  In Indiana, Sarah petitions to terminate the 4–18–94 temporary order and to return Dylan to Florida because the school year is over.  She asks that Tyler's summer visitation be delayed.  The Indiana Court grants her request that Dylan be sent Dylan to Florida but de-

2.  The language of the 1986 Agreement by which the parties purportedly tried to control jurisdiction is as follows:

5.  In return for this Agreement to extended and additional visitation, the parties agree that neither will further litigate either action pending in Florida or Indiana under the Uniform Child Custody Jurisdiction Act, saying:

(a) this agreement is not a stipulation by either party that either the State of Indiana of Florida has jurisdiction of these minor children;

(b) should any issues of custody or visitation arise at the termination of this Agreement on or about June 4, 1987, the Husband agrees that he will not present or argue the fact of the children's extended visitation in Indiana as provided by herein, as a basis for jurisdiction lying with the Indiana courts, providing the Wife is in compliance with this Agreement.

(c) should such issues as referred to in subparagraph (b) arise, either party may revisit the issues of whether the Indiana or Florida court has jurisdiction over these minor children providing if the Husband deems it appropriate to seek a change or modification of the children's custody, support or visitation, that he will initially invoke only the jurisdiction of the Circuit Court in and for Alachua County, Florida to litigate the pending jurisdictional issues.

(d) in the event either party violates this Agreement, either the Husband or Wife may use the periods of extended visitation herein to further vest the jurisdiction of Indiana or Florida courts over these minor children.

(R. at 30–31).

nies her request that Tyler's visitation be delayed.

6–24–94 In Indiana, Sarah files a motion requesting that Dylan's personal property be returned to him in Florida which the Indiana Court grants on 6–27–94.

On August 2, 1994, the Indiana Court determined that it had continuing jurisdiction over this case and that "Indiana is not now an inconvenient forum pursuant to I.C. 31–1–11.6–7." (R. at 298). Thereafter, Sarah brought this interlocutory appeal.

## DISCUSSION

■ Sarah contends that the trial court erred by finding it retained jurisdiction to modify its previous order of custody and visitation. She presents an argument in three parts which we will consider, keeping in mind our standard of review: a ruling made by the trial court is considered presumptively valid on appeal and it is the burden of the party appealing to establish its legal invalidity. *Moore v. State* (1986), Ind., 493 N.E.2d 778, 779.

Sarah bases her claim upon Indiana's Uniform Child Custody Jurisdiction Law, IND. CODE 31–1–11.6–1 through 31–1–11.6–25 (1993). Florida has also adopted a version of the Uniform Child Custody Jurisdiction Act at Fla.Stat. Sec. 61.1302 through 61.1348. We will refer to these pieces of legislation as the UCCJL. *See Smith v. Smith* (1992), Ind.App., 594 N.E.2d 825, 826.

■ Initially, Sarah asserts that the threshold question is not whether Florida or Indiana has jurisdiction to modify the Indiana decree but which state should decide the issues of jurisdiction. She argues that the 1986 Agreement settled this matter when it stated: "if the Husband deems it appropriate to seek a change or modification of the children's custody, support or visitation, that he will initially invoke only the jurisdiction of the Circuit Court in and for Alachua County, Florida to litigate the pending jurisdictional issues." (R. at 31).

**3.** We note that the language concerning jurisdiction in the 1986 Agreement is not relevant to the trial court's consideration of inconvenient forum.

■ However, this argument cannot succeed because jurisdiction cannot be imposed by consent of the parties. *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23, 27. Jurisdiction is not "one of the bargaining chips" to be haggled over when parents enter into agreements to modify the custody and visitation of their children. Appellant's Brief at 25. Jurisdiction is derived from a statute or the Constitution. *Id.; Farley v. Farley* (1973), 157 Ind.App. 385, 396, 300 N.E.2d 375, 382. In this case, the UCCJL, as adopted and interpreted by Indiana, is "intended to be the exclusive source of authority to adjudicate a custody dispute." *Clark,* 404 N.E.2d at 28 (quoting *Campbell v. Campbell* (1979), 180 Ind.App. 351, 388 N.E.2d 607, 608).

Sarah attempts to characterize the language of the 1986 Agreement as an "agreement concerning initial venue not jurisdiction." Appellant's Brief at 17. This, however, does not aid her argument.

■ The language of the 1986 Agreement speaks in terms of jurisdiction, not venue. Ordinarily when we interpret the language of agreements or contracts, if the language is clear and unambiguous, it must be given its plain and ordinary meaning. *Great Lakes Chemical v. International Surplus Lines Ins.* (1994), Ind.App., 638 N.E.2d 847, 850, *reh'g denied.* The 1986 Agreement contains the word jurisdiction, not venue, forum, or any general term. We see no reason, nor does Sarah suggest a reason, to give the Agreement's provisions any other than its plain and ordinary meaning.

■ Sarah also seems to confuse or misuse the concepts of jurisdiction and venue. Jurisdiction involves a court's power to hear a particular group of cases; venue connotes the proper situs for the trial of an action. *Hootman v. Finance Ctr. Federal Credit Union* (1984), Ind.App., 462 N.E.2d 1064, 1066 n. 7. Even if we were inclined to accept her argument and go beyond the ordinary meaning of the Agreement, the two words or concepts are not interchangeable and one cannot be used as a substitute for the other.[3]

Although UCCJL, specifically I.C. 31–1–11.6–7(c)(4), allows a trial court to considered the preference of the parties as to a forum, the

Next, Sarah contends that Indiana lost jurisdiction when Florida modified the Indiana custody order in 1986 and 1993, and the Indiana Court deferred to the Florida orders by approving, adopting, and filing them. She argues, without authority, that the Indiana Court intentionally deferred to the Florida Court by treating it as if it were a custody decree of another state to be enforced in Indiana as provided in I.C. 31-1-11.6-15, thus, "by operation of law waiving jurisdiction in favor of" Florida. Appellant's Brief at 21.

The UCCJL is the "exclusive method of determining the subject matter jurisdiction of a court in a custody dispute with interstate dimensions." *Wilcox v. Wilcox* (1994), Ind.App., 635 N.E.2d 1131, 1134; *Caban v. Healey* (1994), Ind.App., 634 N.E.2d 540, *reh'g denied, trans. denied.* According to the UCCJL, the court which entered the original child custody decree has continuing exclusive jurisdiction until the children and all the parties have left the state. I.C. 31-1-11.6-14; *Zillmer v. Lakins* (1989), Ind.App., 544 N.E.2d 550, 551; *Clark v. Atkins* (1986), Ind.App., 489 N.E.2d 90, 94, *reh'g denied, trans. denied.* The court which has exclusive jurisdiction may, in its discretion, decline to exercise its jurisdiction if it determines a different forum is in a better position to entertain the litigation. I.C. 31-1-11.6-7(a); *Clark*, 489 N.E.2d at 90. However, in the present case the Indiana Court had continuing jurisdiction and there is no indication that it declined to exercise that jurisdiction.

Further, both the consent order of 1993 and the order of the Florida Court adopting and approving the 1986 Agreement were not, as far as the record reveals, products of an adjudication by the Florida Court, but rather were agreements which the parties brought to the Court. The Florida Court also specifically deferred the issue of jurisdiction in both its orders. Certainly, we cannot find that the Florida Court assumed jurisdiction in this case using such language as "[t]his court makes no finding of fact or law with regard to the issues of jurisdiction herein providing said issues may re-raised by either party

filing subsequent pleadings in the Cause in the Court" (R. at 33), and "[t]he parties consent to the jurisdiction of the Court in Florida *only* for purposes of entering this Consent Order." (R. at 85) (emphasis in original); *see also Lamon v. Rewis* (1992), Fla.App., 592 So.2d 1223, 1225 ("Only when the child and all parties have moved away is the deference to another state's continued jurisdiction no longer required").

Finally, Sarah asserts, regardless of the outcome of the jurisdictional issue, that Florida is "clearly the most convenient forum" for this case because the parties have more access to the pertinent evidence in Florida. She argues that Bruce has voluntarily modified custody twice in Florida and filed numerous pleadings in that state and that the evidence necessary to this dispute is more easily found in Florida. *See* I.C. 31-1-11.6-7(c)(3).

In reviewing the trial court's determination, we consider only the evidence most favorable to the court's determination and will reverse only if the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *Keller v. Keller* (1994), Ind.App., 639 N.E.2d 372, 373, *trans. denied; Benda v. Benda* (1990), Ind.App., 553 N.E.2d 159, 163, *trans. denied.*

In reviewing the best interests of the children, pursuant to I.C. 31-1-11.6-7(c)(3), we note, that Sarah voluntarily submitted to the jurisdiction of the Indiana Court in 1988, when she filed her petition for finding of contempt and clarification of the order. Moreover, Bruce and the children have significant connection with this state and substantial evidence about the children is available here. It is uncontested that Bruce still resides in Indiana, and that the children have made numerous and lengthy visits here, that extensive court records exist here, and that the children know and are related to many people in Indiana. While the trial court could have found that the Florida Court "was a more appropriate forum, it abused no discretion when it did not find itself to be an

relevant language of the 1986 Agreement tries to control which court would decide the issue of

jurisdiction and not the most convenient situs of the custody hearing.

inconvenient forum and left the dispute where it began, in Indiana." *Smith v. Smith* (1992), Ind.App., 594 N.E.2d 825, 829.

Judgment affirmed.

DARDEN and BARTEAU, JJ., concur.