In re the Marriage of Tamara VAN
SCHOYCK, Appellant–
Respondent,

v.

DeWayne VAN SCHOYCK,
Appellee–Petitioner.

No. 46A03–9409–CV–350.

Court of Appeals of Indiana.

Feb. 12, 1996.

**2**

Gojko Kasich, Kasich Law Offices, Scher-erville, for appellant.

John W. Newby, Newby, Lewis, Kaminski & Jones, LaPorte, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-respondent[1] Tamara Van Schoyck ("Tammy") appeals from a modification of child custody in favor of DeWayne Van Schoyck ("DeWayne"). The evidence relevant to this appeal is recited below.

DeWayne and Tammy's marriage was dissolved on February 23, 1990. The parties entered into an agreement which was approved and incorporated into their dissolution decree. In pertinent part, the agreement provided:

"The parties will establish a joint custody arrangement [of their two-year-old son, Joshua] whereby Wife [Tammy] is the residential parent and Husband [DeWayne]

1. Appellant is directed to Ind.Appellate Rule 8.2(A)(1) which provides, in part, that all printed briefs must appear in at least 11–point type with a minimum of 4–point spaces between the lines. The print used in appellant's 50–page brief is

has the rights of reasonable visitation to include alternating major holidays, Tuesday nights and alternate weekends from Friday evening to Sunday noon. The parties agree that they can share openly and cooperate fully concerning matters of Joshua's health, education, welfare, and religious upbringing."

DeWayne was ordered to pay $70.00 per week child support and received a $1,000.00 credit for his share of equity in the marital home.

In May of 1990, the parties agreed to modify the previous decree, and DeWayne was given an additional $1,000.00 equity credit. Subsequently, the parties agreed to reduce DeWayne's support to $50.00 per week. On February 23, 1993, the parties stipulated to again modify the decree; whereby, DeWayne agreed to release Tammy from the $2,000.00 credit equity in return for Tammy applying the equity to DeWayne's support arrearage. The trial court approved the agreement.

DeWayne filed a petition to modify custody on May 23, 1994. Tammy countered with her own petition to modify custody and support. After a hearing on the matter, the trial court entered findings of fact and conclusions of law. The court ordered the parties to continue joint legal custody of Joshua but changed the residential custodian of Joshua to DeWayne, with Tammy paying $25.00 per week for child support. On September 13 and October 31, 1994, the court entered additional findings.

In part, the trial court entered the following findings of fact:

"14. At the time of the Dissolution, husband [DeWayne] was employed at Howmet. Late in 1990, he was laid off. On January 10, 1991, parties stipulated to reduce child support to $50.00 a week, effective January 1, 1991; said stipulation was presented to the Court, approved and entered as orders herein.

extremely small and difficult to read. The reading of appellant's brief is further complicated by frequent quotations to various rules of law and legal standards, resulting in numerous single-spaced quotations.

15. In July, 1990, wife [Tammy] secured employment with Anco in Michigan City, frequently working the midnight shift. She experienced short lay offs from time to time. In May, 1992, she became ill and was hospitalized five (5) days. She attempted to return to work, but subsequently was terminated in December, 1992, because of her health and she could not continue working in a manufacturing setting.

16. As husband was available late in 1990, or early 1991, husband provided child care for Joshua while wife was at work including the night shift from time to time; wherefore husband had physical possession of Joshua more than indicated in the Property Settlement Agreement, but also including Tuesday overnight and alternating weekends.

17. At the time of the Dissolution, husband resided with his parents in Rolling Prairie.

18. For approximately six (6) months early in 1991, husband moved in with his girlfriend, Valerie and her two children in an apartment in the City of LaPorte. Joshua continued to be with husband as indicated in paragraph # 16 above. However, due to an incident when wife went to pick up Joshua from Valerie's apartment, there was a party taking place with alcohol and marijuana. Wife took Joshua from the apartment and the next day secured an outside baby-sitter rather than husband. There was discrepancy in the testimony presented whether husband was present at said party.

19. Shortly thereafter in 1991, husband moved from Valerie's and back to his parents' home in Rolling Prairie. Although husband was again employed, he and his parents resumed providing child care for Joshua while wife was working or unavailable rather than a non-family person providing child care; husband also continued to have Joshua on Tuesday nights and alternating weekends.

20. In September, 1992, husband and his parents moved to their present residence at 918 Ohio Street, LaPorte, Indiana. This is a four bedroom, two-story single family home. Joshua has his own bedroom at the home and uses a second bedroom where he keeps many of his stuffed animals and toys.

21. At the time of the Dissolution in 1990, wife was granted the marital residence located at 1101 Farrand Avenue, LaPorte. She continued to reside there until she sold the home late in March, 1994. This was a single family home within approximately two (2) miles from husband's present address.

22. Wife received unemployment compensation benefits in January, 1993, when she was terminated from Anco; she became employed at Purdue North Central in August, 1993, where she continues to work at this time.

23. About June, 1992, the parties cooperated and husband generally kept Joshua Monday and Wednesday, including overnight, while wife had Joshua Tuesday and Thursdays, including overnight and the parents then alternated weekends. When wife was unemployed in 1993, wife had Joshua more during the day until he started pre-school in June, 1993. There was discrepancy whether wife also had Joshua every Sunday from noon to Monday morning or the parties alternated having Joshua overnight on Sundays.

24. The above pattern for possession of Joshua continued when husband enrolled Joshua in pre-school at the LaPorte YMCA in June, 1993, and also when Joshua started Kindergarten in August, 1993. Husband enrolled Joshua at Hailmann Elementary School, located across the street from husband's residence, although wife preferred Joshua to be enrolled at Handley Elementary School, the elementary school for her residence on Farrand Avenue.

25. Joshua did well in Kindergarten and was promoted to the first grade. He has many friends at school and in husband's neighborhood.

26. Husband's mother is employed outside the home, but his father is retired and provides child care for Joshua when husband is at work, including getting the child up in the morning and then ready for

afternoon Kindergarten the past year. Joshua has a close and beneficial relationship with his paternal grandparents.

27. In November, 1992, husband was arrested in LaPorte on criminal charges for possession of marijuana. These were later dismissed on April 25, 1994, pursuant to a pre-trial diversion program. Also, in 1991, husband [pleaded] guilty to battery, after an altercation with his former girl-friend, Valerie mentioned above, and paid a fine. No injuries were sustained in the incident.

28. The past two (2) years, husband has been involved with Ti–Kwan–Do, with Joshua and Joshua played T–Ball in La-Porte in the summer of 1993. Husband purchased Joshua a B–B Gun about a year ago, teaching him proper gun safety and etiquette and has taken Joshua 'hunting' twice. Wife has expressed concern and disapproval of use of a gun by Joshua.

29. Since September, 1992, wife has had an ongoing relationship with Douglas Lower; several times a week Douglas stayed over-night at wife's home at 1101 Farrand Avenue, LaPorte.

30. On April 1, 1994, when wife sold the home on Farrand Avenue, she moved to 8301 W. 350 S., Westville, Indiana. This is Douglas' parents' home and she and Douglas continue to reside there. Joshua has a room of his own at this home; he adjusted to the move, plays with a few neighborhood children and Douglas' nieces and nephews. The home is in the Westville school district and Joshua would be bused to school if he resides with mother.

31. During the past year, Douglas frequently provided transportation for Joshua between the two homes because of wife's work schedule at Purdue North Central.

32. When school ended in June, 1994, and after husband filed his Petition for Modification herein, wife informed husband she would again exercise her parental duties as residential parent with husband having visitation only as outlined in the original Property Settlement Agreement and Dissolution Decree, therefore during the summer of 1994, husband has had possession of Joshua only on alternate weekends, overnight on Tuesdays and alternating holi-

days. Joshua did participate in T–Ball in Westville with Douglas' father as coach, rather than in LaPorte with husband.

33. Joshua has established a close and beneficial relationship with both parents. He enjoys many activities with each individual parent. He is outgoing and well adjusted. He appeared comfortable with joint physical custody established by the parents from 1991 through May, 1994.

\*  \*  \*  \*  \*  \*

38. No evidence was given how long wife's present living arrangement with Doug and his parents may last other than that wife and Douglas may get married and build their own home.

39. Douglas Lower is employed in South Bend three (3) days a week at a jewelry store owned by a relative. His previous employment was at Purdue North Central when he was accused of theft and terminated in 1993. There are presently criminal charges of conspiracy to commit theft pending against Douglas in LaPorte Superior Court # 3."

Tammy now appeals the trial court's modification of child custody.

On appeal Tammy raises six issues for review. However, because this Court concludes that the judgment of the trial court warrants reversal, we address only the following issues:

(1) whether the trial court erred in applying the amended version of IND. CODE § 31–1–11.5–22(d), effective July 1, 1994; and

(2) whether the trial court abused its discretion when it granted DeWayne's petition for change of the residential parent and denied Tammy's petition requesting joint custody be terminated.

■ A determination of custody or a modification in custody lies within the sound discretion of the trial court. *Swonder v. Swonder*, 642 N.E.2d 1376, 1380 (Ind.Ct.App. 1994). On appeal, our review is limited to determining whether the trial court abused its discretion in applying statutory guidelines. *Id.* This Court may neither reweigh

the evidence nor judge the credibility of the witnesses. *Id.* Only the evidence which supports the trial court's decision may be considered. *Id.* Reversal is warranted only upon a showing of a manifest abuse of discretion, that is when the trial court's decision is clearly against the logic and effect of the facts and circumstances of the case. *Id.*

▪ Additionally, pursuant to Tammy's request, the trial court entered findings of fact and conclusions of law. When findings of fact and conclusions of law are requested by a party, this Court first determines whether the evidence supports the trial court's findings and second, whether the findings support the judgment. *Bauer v. Harris*, 617 N.E.2d 923, 926 (Ind.Ct.App.1993); Ind.Trial Rule 52(A).

▪ Initially, Tammy contends that the trial court erred in applying the amended version of IND.CODE § 31–1–11.5–22(d), effective July 1, 1994. Specifically, she argues that the trial court's reliance on the statute as amended amounts to a retroactive application.

DeWayne's petition to modify custody was filed on May 23, 1994. Tammy filed a motion for continuance and her own petition to modify custody and support on June 13, 1994. Thereafter, a hearing was held on the parties' petitions on August 18, 1994, approximately one month after the effective date of the amended statute.

After studying the statute and its effect on modification hearings, it is clear that the legislative intent was for the amended statute, IND.CODE § 31–1–11.5–22(d) (July 1, 1994) to apply to all cases heard after July 1, 1994. The amended statute does not impose any detriment to either party. The testimony heard and evidence received included matters up to the date of the August 18, 1994 hearing. Hence, the trial court was not applying the amended statute retroactively, although both parties filed their petitions prior to the effective date. As pointed out by the trial court, it would be a waste of judicial economy for the court to require either party to dismiss and refile their petitions prior to applying the statute as amended.

Tammy also contends that the trial court abused its discretion when it granted DeWayne's petition for change of residential parent from her to DeWayne and denied her request to terminate joint custody.

▪ Under IND.CODE § 31–1–11.5–22(d) (July 1, 1994), the statute, as amended, alters existing law concerning modification of child custody which allowed for modification only upon a showing of changed circumstances so substantial and continuing as to make the existing order unreasonable. *See Lamb v. Wenning*, 600 N.E.2d 96, 99 (Ind.1992). Section 22(d) now provides:

"(d) The court may not modify a child custody order unless:

(1) it is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors which the court may consider under section 21(a) of this chapter."

IND.CODE § 31–1–11.5–22(d). Hence, with regard to a decision to modify an existing custody order, the trial court must determine both whether a change is in the best interests of the child and whether there has been a *substantial* change in one or more of the factors which were initially used to determine child custody. Although the amended provision no longer requires a showing that the existing order is unreasonable, the change in condition required to modify a prior custody must be substantial.

▪ Here, the trial court specifically found that:

"Joshua has established a close and beneficial relationship with both parents. He enjoys many activities with each individual parent. He is outgoing and well adjusted. He appeared comfortable with joint physical custody established by the parents from 1991 through May, 1994."

Finding No. 33. This finding is contrary to the trial court's conclusion which changes the residential parent of Joshua to DeWayne.

▪ Further, there was insufficient evidence of a substantial change in one or more of the factors which were initially used to determine child custody. The factors listed in Section 21(a) include:

"(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community; and

(6) the mental and physical health of all individuals involved."

IND.CODE § 31–1–11.5–21(a).

Relying on factors (4) and (5), DeWayne contends that his relationship and that of his parents with Joshua, combined with Joshua's comfort regarding his home, his school, and his friends present a substantial change. DeWayne also points to Tammy's move from LaPorte and her need to place Joshua in day care.

Tammy should not be penalized for placing Joshua in day care. It is often a necessity that a child be placed in day care while his or her parent works. Tammy's willingness to allow Joshua's paternal grandparents and DeWayne the additional time with Joshua, rather than placing him with an unrelated third party, is to be commended. The move to Westville, Indiana also does not constitute a substantial change warranting a modification in custody. The distance between Tammy's new home and DeWayne's home is relatively short and should not have an effect on the parents' joint custody or visitation schedule.

█ The trial court's findings do not support a change of the residential parent from Tammy to DeWayne. However, the trial court did not abuse its discretion in maintaining joint custody, as there was no evidence presented that the joint custody arrangement is unworkable. The judgment of the trial court is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

GARRARD, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

I dissent insofar as the majority holds that the evidence does not disclose a sufficient substantial change in one or more of the original factors which led to residential placement with Tammy. In my view the evidence does justify the court's conclusion that there was such a change and further that residential placement with DeWayne would be in the child's best interest.

The evidence does in fact show that Tammy's new residence was in a different town and a different school district and that it was not in the former family home but was in the home of her boyfriend's parents. The evidence further permits the conclusion that the child's positive identification with friends in the LaPorte neighborhood and school were more conducive to his best interests than residence in Westville and attendance at a new school would be.

In this light, I believe the preservation of joint-custody but transference of residential placement to the father was reasonable under the applicable modification statute. I would affirm.