Carla C. PALM, n/k/a Carla C. Roahrig, Appellant–Respondent,

v.

Robert D. PALM, Appellee–Petitioner.

No. 71A03–9709–CV–321.

Court of Appeals of Indiana.

Jan. 21, 1998.

Mario J. Zappia, Zappia & Zappia, South Bend, Christopher L. Laux, Notre Dame, for Appellant–Respondent.

Robert J. Palmer, E. Spencer Walton, Jr., May Oberfell & Lorber, South Bend, for Appellee–Petitioner.

## OPINION

HOFFMAN, Judge

Appellant-respondent Carla C. Roahrig (Carla) appeals from a decision of the trial court modifying custody of her minor son, Brett, in favor of appellee-petitioner Robert D. Palm (Robert). The facts most favorable to the judgment are presented below.

On September 6, 1990, the St. Joseph Circuit Court dissolved the marriage of Robert and Carla. There were two children born of the marriage: Brian, born August 3, 1978, and Brett, born October 28, 1988. The parties were granted joint legal custody of the two children with physical custody awarded to Carla. On November 16, 1990, Carla filed a notice of intent to move to the state of Florida. Thereafter, the court granted Carla's petition. Upon the court's request, the Domestic Relations Counseling Bureau (DRCB) made specific findings and recommendations regarding therapy and counseling of the children. In 1992, Brian moved back to live with Robert and has resided in Indiana since then.

In August of 1994, Robert contacted Carla to obtain counseling for Brett, due to Brett's display of emotional problems as witnessed during a summer visitation. Unknown to Robert, Carla had begun counseling herself due to problems she was having with her mother, Brett's grandmother, and her boyfriend, Eric Roahrig. Subsequently, Carla and Eric married.

Robert and Carla agreed that Brett would be evaluated by Dr. Kathryn Kuehnle. Dr. Kuehnle issued a report in May of 1995 recommending that Brett would benefit from individual counseling to address relationship issues regarding his father and mother. The doctor reported that the therapy should also address recent changes in Brett's life, including sharing his mother with his stepfather; the loss of living with his grandmother; and

moving away from his best friend and cousin, Blaine. In 1995 and 1996, Dr. Kuehnle began counseling with Carla's blended family, which included her two stepchildren. This counseling, however, prevented the doctor from giving Brett individual therapy.

Robert became further concerned with Brett's emotional behavior and comments when he saw Brett in November of 1995. Robert voiced these concerns to Carla. On April 16, 1996, Robert filed a motion for psychological evaluation with the circuit court. Immediately thereafter, the parties agreed to use Dr. Sylvia Carra to perform an evaluation of Brett. Dr. Carra issued her report in September of 1996.

At that time, Dr. Carra concluded that Robert's concerns were substantiated by her evaluation. Specifically, she concluded that Brett was at risk for numerous emotional difficulties and had continued to deteriorate. The doctor's findings pointed to Eric, the stepfather, as a primary cause of Brett's difficulties. Dr. Carra opined, "Dr. Kuehnle indicated it would have been worth while for Brett to have obtained counseling last year. I believe that this is critical at this point and no longer optional." In addition, the doctor recommended that Carla and Eric participate in family therapy with Brett.

Brett was also evaluated by Dr. Timothy Onkka and Dr. Herbert Goldstein pursuant to an agreement of the parties. Both doctors confirmed the findings and recommendations of Dr. Carra with respect to concerns regarding Eric's impact on the psychological and emotional problems Brett was experiencing. Dr. Onkka stated that keeping Brett in Florida with his mother and Eric caused him a great deal of concern for Brett's well-being. Both doctors further found that the environment in Robert's home was more stable. Dr. Goldstein in particular stated, "It seems likely that the father's home is more relaxed, less dysfunctional and contains fewer emotional agendas and undercurrents."

On September 12, 1996, Robert filed a petition to modify custody. The parties appeared for a hearing on September 23, 1996. At this time, the court referred the issue of

permanent custody to the DRCB for investigation and report. The court also ordered Carla, Eric, and Brett to initiate immediate counseling with Dr. Carra in Florida. On October 10, 1996, Carla filed a petition to transfer to a more convenient forum, in particular, Florida. The court subsequently denied her motion.

On November 14, 1996, the court admonished Carla regarding her noncompliance with the court's prior directive regarding selection of a therapist and evaluator. On November 25, 1996, the court appointed Dr. Espy Ball as a therapist for Brett and ordered Carla to "immediately" take Brett to Dr. Ball for counseling.

The court heard evidence on Robert's petition to modify on January 30 and 31, 1997. As of the date of the hearing, Brett had not yet been seen for individual counseling as was deemed critical by Dr. Carra, five months earlier, and as ordered by the court.

At the hearing, Elizabeth Kerns of the DRCB testified that Carla's failure to comply with specific recommendations for individual counseling for Brett and her failure to comply with the court's orders substantially affected her conclusions. Kerns also testified that a deterioration or change in the interaction and interrelationship of Brett with his father, Robert, would indicate an inappropriate interference by Carla and Eric that also would affect her decision to remove Brett immediately. Finally, Carla testified that despite the numerous reports and recommendations of the various doctors and the DRCB, she did not agree with the evaluation of Brett.

Thereafter, the court found that there had been a "substantial change in the interaction and interrelationship of Brett Palm with his parents, his stepbrothers and his stepfather who significantly affected this child's [Brett's] best interest." The court further found that Brett was having difficulty adjusting to his environment and that remaining in Florida affected his mental health. The court also considered as important the fact that Carla ignored prior orders regarding therapy.

On May 19, 1997, the court granted Robert's verified motion to modify custody. Carla now appeals. Additional facts will be supplied as necessary.

Carla raises three issues for appeal:

(1) whether the trial court was required to make findings of fact and conclusions of law in denying Carla's motion to transfer to a more convenient forum;

(2) whether the trial court abused its discretion in retaining jurisdiction to rule on the petition for modification; and

(3) whether the trial court's findings of fact and conclusions of law support its order modifying custody.

 Carla first contends that the trial court erred in failing to enter findings of fact or conclusions of law upon the court's denial of her motion to transfer to a more convenient forum. Ind.Trial Rule 52(A) provides that a court shall enter findings of fact and conclusions of law: (1) upon a written motion by either party; or (2) upon the court's own motion. T.R. 52(A). When the request for special findings is made by a party, a written motion must be filed with the trial court prior to the admission of evidence. *J.L.L. v. Madison County Dept. of Public Welfare,* 628 N.E.2d 1223, 1225 (Ind.Ct.App.1994); *E.W.R. v. T.L.C.,* 528 N.E.2d 106, 108 (Ind. Ct.App.1988), *trans. denied.* Additionally, the rule specifically requires a trial court to enter special findings: "(1) in granting or refusing preliminary injunctions; (2) in any review of actions by an administrative agency; and (3) in any other case provided by these rules or by statute." T.R. 52(A)(1)-(3).

 Here, Carla cites no rule or statute which required the trial court, on its own, to enter findings of fact and conclusions of law with respect to her motion to transfer. Although IND. CODE § 31–17–3–7 (1997 Supp.) mandates the court to consider if it is in the best interest of the child that another state assumes jurisdiction and sets forth a nonexclusive list of factors which the trial court may consider, there is nothing in the statute which required the trial court to enter special findings and conclusions. Further, Carla's request for special findings was not filed until her motion to correct error.

Hence, it was untimely. The trial court did not err in failing to enter special findings of fact and conclusions of law in ruling on Carla's motion to transfer.

■ Carla also asserts that the trial court committed reversible error in failing to engage in a "multi-step process to determine first, whether it has subject matter jurisdiction, and whether to exercise that jurisdiction." With respect to subject-matter jurisdiction, Carla conceded at the hearing that the trial court continued to have subject-matter jurisdiction because the original dissolution was entered by the St. Joseph Circuit Court. *See Smith v. Smith,* 594 N.E.2d 825, 826 (Ind.Ct.App.1992) (generally, the court which grants the original decree has full and continuing jurisdiction to periodically order and modify custody).

Once it is determined that the trial court has subject-matter jurisdiction, the next inquiry is whether there is a pending custody proceeding in another state. *In re Marriage of Cline,* 433 N.E.2d 51, 52 (Ind.Ct.App. 1982). Here, there is nothing in the record to suggest that any other custody proceeding was pending in the state of Florida at the time the court exercised its jurisdiction.

■ Finally, the court must determine whether to exercise its jurisdiction. *Id.* It is clear, in the present case, that the trial court fulfilled its duty. The court conducted a hearing on Carla's motion to transfer. A review of the record also establishes that the court considered the potential difficulties in obtaining testimony and the fact that Brett was presently living in Florida. However, the court noted that it had heard the proceedings on related issues raised by the parties on a number of previous occasions. After considering the factors, the trial judge stated, "But I still believe there's a lot to be said in these cases for some sense of continuity." The purpose of the hearing was to determine whether the St. Joseph Circuit Court was an inconvenient forum. The record demonstrates that the trial court considered various factors in reaching its conclusion to retain jurisdiction. Carla has failed to establish that the trial court violated any procedural guidelines in denying her motion to transfer.

■ In a closely related argument, Carla contends that the trial court erred in failing to transfer the custody proceedings to Florida. In reviewing a trial court's decision to exercise jurisdiction under Indiana's Child Custody Jurisdiction Law, IND. CODE § 31–17–3 *et seq.,* the issue before this Court is whether the trial court has abused its discretion. *Clark v. Atkins,* 489 N.E.2d 90, 100 (Ind.Ct.App.1986), *trans. denied.* In making its determination, this Court considers only the evidence most favorable to the trial court's determination and will reverse only if the result is clearly against the logic and effect of the facts and the reasonable inferences to be drawn therefrom. *Cabanaw v. Cabanaw,* 648 N.E.2d 694, 698 (Ind.Ct. App.1995), *citing, Keller v. Keller,* 639 N.E.2d 372 (Ind.Ct.App.1994), *trans. denied.*

■ A review of the facts establishes that the trial court did not abuse its discretion in exercising jurisdiction. Since the time the petition for dissolution was filed in 1989, the St. Joseph Circuit Court has conducted hearings on visitation, custody, and supporting issues, including psychological assessments and counseling, no less than on 16 occasions. The court has also referred issues involving visitation and custody to the St. Joseph County Domestic Relations Counseling Bureau on two different occasions. It was not until after the court received a letter from the DRCB, on September 26, 1996, that Carla filed her motion to transfer to a more convenient forum.

Other factors supporting the trial court's retention of jurisdiction include the fact that Brett has a number of family members in Indiana, including his older brother and his maternal grandmother who spends six months of each year in Indiana. More importantly, the counselors who evaluated Brett believed the child needed counseling and therapy immediately. Despite the trial court's order of September 23, 1996, in which Carla, Eric, and Brett were ordered to immediately initiate counseling, no such counseling had taken place up until the time the court entered its order granting modification of custody. This issue was raised repeatedly by the trial court. There is no dispute that at the time Carla filed her motion to transfer, there was no custody proceeding pending in

Florida. Thus, the most expeditious way for Brett to obtain counseling was for the St. Joseph Circuit Court to retain jurisdiction.

Prior Indiana case law also supports the trial court's decision. In *Cabanaw*, 648 N.E.2d 694, this Court referred to the extensive court records in Indiana in affirming jurisdiction. Specifically, this Court stated:

> In reviewing the best interest of the child pursuant to I.C. 31–1–11.6–7(c)(3) [now I.C. § 31–17–3–7(c)(3)], we note, that Sarah voluntarily submitted to the jurisdiction of the Indiana Court in 1988, when she filed her petition for finding of contempt and clarification of the order. Moreover, Bruce and the children have significant connection with this state and substantial evidence about the children is available here. It is uncontested that Bruce still resides in Indiana, and that the children have made numerous and lengthy visits here, and that the children know and are related to many people in Indiana. While the trial court could have found that the Florida Court "was a more appropriate forum, it abused no discretion when it did not find itself to be an inconvenient forum and left the dispute were it began, in Indiana". *Smith v. Smith* (1992), Ind. App., 594 N.E.2d 825, 829.

*Cabanaw*, 648 N.E.2d at 698–699.

In the present case, many factors support the trial court's decision to retain jurisdiction, including the court's familiarity with the extensive custody and visitation issues which have been previously raised. The trial court did not abuse its discretion in retaining jurisdiction.

 Finally, Carla asserts that the trial court abused its discretion in modifying custody. A determination of custody or a modification of custody lies within the sound discretion of the trial court. *Van Schoyck v. Van Schoyck*, 661 N.E.2d 1, 4 (Ind.Ct.App. 1996), *trans. denied.* On appeal, this Court's review is limited to determining whether the trial court abused its discretion in applying statutory guidelines. *Id.* This Court may neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* at 4–5. Only the evidence which supports the trial court's decision may be considered. *Id.* at 5. Reversal is warranted only upon a showing of a manifest abuse of discretion, that is when the trial court's decision is clearly against the logic and effect of the facts and circumstances of the case. *Id.*

 As for a decision to modify an existing custody order, the trial court must determine both whether a change is in the child's best interest and whether there has been a substantial change in one or more of the factors which were initially used to determine custody. *Id.;* IND. CODE § 31–17–2–21 (1997 Supp.).

 Additionally, the trial court entered findings of fact and conclusions of law with regard to the issue of modification of custody. When special findings and conclusions are entered, this Court must employ a two-tiered standard. First, this Court must determine whether the evidence supports the findings and, secondly, it must determine whether the findings support the judgment. *Rose v. Denman*, 676 N.E.2d 777, 781 (Ind. Ct.App.1997).

Carla merely requests this Court to reweigh the evidence, which it will not do. In her brief, Carla fails to set forth evidence supporting the trial court's judgment; rather, she argues only the evidence in her favor. More importantly, Carla has failed to challenge the trial court's findings and conclusions of law as clearly erroneous. A review of the record establishes that this is sufficient evidence to support the trial court's conclusion that there has been a substantial change in the interaction and interrelationship of Brett to his parents, his stepbrothers, and his stepfather which affects his best interest. There is also more than sufficient evidence that remaining in Florida has materially affected Brett's mental health and well-being. No less important is Carla's refusal to acknowledge Brett's problem and initiate court-ordered individual therapy for the child. The trial court did not abuse its discretion in modifying custody. Hence, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and RILEY, JJ., concur.