Kimberly (Wynkoop) DWYER, Appellant–Respondent,

v.

Troy D. WYNKOOP, Appellee–Petitioner.

No. 49A05–9703–CV–101.

Court of Appeals of Indiana.

Aug. 21, 1997.

Transfer Denied Dec. 4, 1997.

*Freeman*, 236 Kan. 677, 693 P.2d 1199 (1985). *But see State ex rel. State Auto Mut. Ins. Co. v. Steptoe*, 190 W.Va. 262, 438 S.E.2d 54 (1993).

Denise F. Hayden, Indianapolis, for Appellant–Respondent.

Richard M. Mantel, Indianapolis, for Appellee–Petitioner.

**OPINION**

SHARPNACK, Chief Judge.

Kimberly Winkoop Dwyer appeals the judgment of the trial court modifying custody of her minor child in favor of the child's father, Troy Winkoop. The sole issue raised for our review is whether the trial court erroneously modified the existing custody order. We affirm.

The facts most favorable to the judgment follow. On March 16, 1994, Troy and Kimberly dissolved their marriage. They waived a final dissolution hearing and the summary dissolution decree incorporated an agreement between them stipulating that physical custody of the couple's minor child, S.W., would be with Kimberly.

On or about September 10, 1995, Kimberly telephoned Troy's wife, Christy. Kimberly requested that Christy pick up S.W. at Kimberly's residence. Upon arriving at Kimberly's home, Christy learned that Kimberly had attempted to commit suicide by overdosing on prescription medication after a dispute with her boyfriend. Kimberly was crying and stated that she "couldn't handle it anymore." Record, p. 434. On September 12, 1995, Troy filed a Combined Verified Emergency Petition for Ex Parte Custody Determination, Psychiatric and/or Psychological Evaluation and Restraining Order which alleged that Kimberly had attempted suicide on September 10, 1995. Because Troy did not return S.W. to Kimberly immediately following this incident, Kimberly filed a Verified Petition for Immediate Return of Minor Child on September 12, 1995.

On September 13, 1995, Troy was granted temporary emergency custody of S.W. pending a hearing on the matter of custody. Following this hearing on October 2, 1995, the trial court ordered Kimberly to seek counseling and held that S.W. would be returned to her custody provided that Kimberly comply

with the order. Thereafter, three evidentiary hearings were conducted between August and November of 1996 on the matter of custody. On December 9, 1996, the trial court ordered a modification of custody granting sole legal and physical custody to Troy. The trial court issued findings of fact and conclusions thereon in part as follows:

"(9) Since March 16, 1994 Kimberly has neglected [S.W.'s] dental hygiene, resulting in numerous cavities, which have been treated by Dr. Annette T. Farthing, a specialist in children's dentistry.

(10) Kimberly suffers from a mixed personality disorder which in the past has been characterized by relationship difficulties, depression, hysteria, irritability, hostility, and angry outbursts. These are traits which are likely to reoccur.

(11) Kimberly's psychological condition existed on and before March 16, 1994 [the date of original dissolution decree] and there is no evidence that it has exacerbated since the dissolution of her marriage to Troy.

(12) The Court does not find that there has been a substantial change in Kimberly's mental health.

(13) The Court does, however, find that there has been a substantial change in a *relevant factor* to the issue of [S.W.'s] custody. That is the fact that Kimberly's mental health was not submitted to the Court as an issue in the summary proceedings by which the parties' marriage was dissolved, and the substantial change lies in the fact that the issue of Kimberly's mental health is now submitted to the Court for the first time.

(14) This Court would be remiss in it's [sic] duty to [S.W.] if it continued to submit the child to the custody and care of a Kimberly who suffers, albeit without fault of her own, from a personality disorder likely to result in emotional harm to the child.

(15) It is in [S.W.'s] best interests that her custody be changed from her mother to her father."

Record, pp. 285–286 (original emphasis)(citations omitted). Kimberly now appeals this modification of custody.

■ The sole issue raised for our review is whether the trial court erroneously modified the existing custody order. The standard for modification of an existing custody arrangement is found in Ind.Code § 31–1–11.5–22 which provides in part:

"(d) The court may not modify a child custody order unless:

(1) It is in the best interests of the child; and

(2) There is a substantial change in one (1) or more of the factors which the court may consider under section 21(a) [IC 31–1–11.5–21(a)] of this chapter.

(e) In making its determination, the court shall consider the factors listed under section 21(a) of this chapter.

(f) The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described under section 21(a) of this chapter."

The factors to be considered set forth in I.C. § 31–1–11.5–21(a) include:

"(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community;

(6) the mental and physical health of all individuals involved; and

(7) evidence of a pattern of domestic violence by either parent."

Kimberly contends that under the statute the trial court, before modifying custody, was

required to find a substantial change in her mental health between the time of the original dissolution decree and the time of the petition for modification. She therefore concludes that because the trial court found that her psychological problems had not worsened during that time period, that the statutory requirement for a "substantial change in one (1) or more of the factors" was not met. I.C. § 31–1–11.5–22(d)(2)

However, the current version of this statute reflects an amendment that became effective in July 1, 1994.[1] Unlike previous versions of the statute, the current version no longer requires a change in circumstances, but rather a change in "one or more of the *factors* which the court may consider." I.C. § 31–1–11.5–22(d)(2) (emphasis added). In *Joe v. Lebow*, we reviewed this change in detail:

> "Upon reading the revised statutes, however, it is clear that the legislature has deleted or modified certain language which embodied the strict standard. Most notably, the statutory language requiring that the changed circumstances 'make the existing custody order unreasonable' has been deleted. Further, the requirement that there be substantial *and continuing* changes in the 'circumstances' has been modified, so that the court need now find only a 'substantial change' in one or more of the factors which the court considers in determining the child's best interests. When a statute contains language which is deleted by the legislature, we presume that the legislature intended the deletion to represent a change in the law. . . . We find from these rules strong support for [the] argument that the legislature 'deliberately lessened the [strict] standard' for modification."

*Joe v. Lebow*, 670 N.E.2d 9, 19 (Ind.Ct.App.1996)(original emphasis)(citations omitted). Thus, the first part of the statutory test which required a substantial change in circumstances now requires only a substantial change in one of the statutory factors. I.C. § 31–1–11.5–22(d)(2) After this part of the test is satisfied, the trial court must still make a determination of whether a modification would be in the best interests of the child. I.C. § 31–1–11.5–22(d)(1).

Here, the trial court found that because it had no knowledge of Kimberly's psychological problems at the time it approved the original decree, such new information constituted "a substantial change in a *relevant factor*" used to determine custody. Record, p. 286 (original emphasis). The trial court also noted that it "would be remiss in it's [sic] duty to [S.W.] to submit the child to custody and care of a Kimberly who suffers … from a personality disorder likely to result in emotional harm to the child." Record, p. 286.

However, Kimberly interprets the statute to mean that such new information would not constitute a change in a statutory factor. Interpreting the statute in this way would mean that when a serious circumstance, currently jeopardizing the welfare of the child, comes to the attention of the court for the first time upon a petition for modification, a trial court must ignore such circumstance solely because it finds that the current circumstance also existed to the same degree prior to the original decree. Such a conclusion would be contrary to the policies underlying the law of custody modification. The focus of judicial custody decisions must be the best interests of the child. *Winderlich v. Mace*, 616 N.E.2d 1057, 1059 (Ind.Ct.App. 1993), *reh'g denied*. "In a modification hearing, the trial judge must consider the evidence with the best interests of the child or children as the paramount concern." *Id.* We find that the trial court's interpretation of the statute better supports the well established policy of focusing on the welfare of the child.

In recognizing this strong policy, however, we emphasize that maintaining sta-

---

1. The previous version of section (d) of this statute provided as follows:

> "(d) The court[,] in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. In making its determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances."

bility in a child's life is still a significant component of a best interests determination. *Wallin v. Wallin*, 668 N.E.2d 259, 262 (Ind.Ct.App.1996)(holding that continuity of custody remains the key in determining the best interests of the child.). The importance of stability was the underlying policy of the traditionally strict "changed circumstances" rule. "The animating principle behind these relatively 'bright-line' rules . . . was that because of the assumption that stability of custody is in the child's best interests, changes in custody are to be granted only upon a strict showing that the change is necessary for the child's welfare." *Joe*, 670 N.E.2d at 19. Although the amendment to the modification statute has changed the previous standard for custody modification, this change in the standard does not lessen the significance of maintaining stability in a child's life. *See Wallin*, 668 N.E.2d at 262. Therefore, even when applying this revised standard, a trial court must still balance the effects of a change in custody with the effects of maintaining the *status quo*. *See id.*

■ We further emphasize that a petition to modify is not a vehicle to relitigate the initial custody determination as to who might make the better parent. *Swonder v. Swonder*, 642 N.E.2d 1376, 1379–1380 (Ind.Ct.App. 1994). However, we do not find that the consideration of critical information about the child's current circumstances previously unknown to the trial court constitutes relitigation of a previous custody determination, especially when custody was stipulated to by the parties in a summary dissolution proceeding as it was here.[2]

■ Kimberly also points to I.C. § 31–1–11.5–22(f) of the statute which provides:

(f) The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described under section 21(a) of this chapter.

However, because this section refers to "the last custody proceeding," it does not necessarily apply to situations where custody was originally determined solely by stipulation of the parents without further inquiry by the trial court. This provision simply illustrates the principle of *res judicata* which prevents unnecessary relitigation of issues that have been previously litigated. *See generally State v. Huffman*, 643 N.E.2d 899, 901 (Ind. 1994), *reh'g denied*. This principle seems especially significant in light of the particularly disruptive effect that relitigation of custody matters may have on the parties involved. Therefore, when parents stipulate as to who will have custody of the child and the trial court grants a summary dissolution on the basis of such agreement without hearing evidence on the issue of custody, there is no "custody proceeding" that would activate this section of the statute. I.C. § 31–1–11.5–22(f). Thus, this section does not apply to situations where custody was originally determined solely by stipulation of the parties.

■ Therefore, in light of the plain language of the statute and its underlying policies, we hold that when material information related to one of the statutory factors comes to the attention of the trial court for the first time while evaluating a petition for modification for custody, such new information may constitute a substantial change in that factor for the purposes of the modification statute. *See* I.C. § 31–1–11.5–22(d)(2). Once the trial court finds a substantial change in a factor, it must next address whether the change is in the best interests of the child. *See* I.C. § 31–1–11.5–22(d)(1) Given the potentially disruptive effect that a change in custody may have on a child, the trial court should, in its best interests determination, clearly indicate in its order for modification that it has carefully considered the effect that a change in custody will have on the child and that such effect is outweighed by the consequences of maintaining the current custody arrangement. *See Wallin*, 668 N.E.2d at 262.

---

2. A number of courts in other states have held that the changed circumstance rule does not apply when custody is determined by stipulation or default. *Elmer v. Elmer*, 776 P.2d 599, 604 (Utah 1989); *see Espersen v. Davidow*, 359 Pa.Super. 531, 519 A.2d 479, 480–481 n. 1 (1986); *Hill v. Hill*, 228 Kan. 680, 620 P.2d 1114, 1119 (1980).

■ Because Kimberly failed to demonstrate that the trial court erroneously interpreted the modification statute, we must next consider whether the trial court abused its discretion in its application of the statute in this case. The modification of custody lies within the sound discretion of the trial court. *Van Schoyck v. Van Schoyck*, 661 N.E.2d 1, 4–5 (Ind.Ct.App.1996), *trans. denied.* Our review is limited to determining whether the trial court abused its discretion in applying statutory guidelines. *Id.* We may neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Reversal is warranted only upon a showing of a manifest abuse of discretion, that is when the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.*

■ In the case at bar, the trial court indicated in its findings that it had no previous knowledge of Kimberly's mental problems.[3] Because the parties waived a final hearing prior to the trial court's approval of the custody stipulation in its dissolution decree, the issue of custody had not been litigated. During one of the subsequent modification hearings, a clinical psychologist testified that psychological evaluations that had been performed on Kimberly suggested that she suffered from mixed personality disorder. He also testified that the test results suggested impulsiveness, poor planning, poor work history, underachievement, instability, and relationship difficulties. Further, when asked about the impact of this condition upon S.W., the psychologist stated that "[a]ny child exposed to an ongoing pattern of psychopathology, has a greater risk factor for mirroring or reflecting, developing, internalizing similar behavior patterns and similar degrees of psychopathology." Record, p. 688. Troy's wife, Christy, also testified that Kimberly, distraught over a breakup with her boyfriend, attempted to take her own life. Such evidence was material to the statutory factor of "the mental and physical health of all individuals involved." I.C. § 31–1–11.5–21(a)(6). Because this information was not previously considered by the court, we find that such new information constitutes a change in a statutory factor. *See* I.C. § 31–1–11.5–22(b)(2). Further, given the potential impact of Kimberly's psychological problems on S.W., we find that such new information constitutes a substantial change in a statutory factor. *See id.* Therefore, we find that the substantial change portion of the statutory test has been satisfied. *See id.*

With respect to the best interests evaluation, the trial court heard evidence on the condition of S.W.'s teeth and found that Kimberly had neglected S.W.'s dental hygiene. The trial court further found that S.W. had a good relationship with Troy, his wife and her children, and that S.W. was well-adjusted in Troy's home. This finding indicated that the trial court had considered the impact that a change in custody would have on S.W. In light of these findings and Kimberly's psychological problems, including her attempted suicide, we find that the trial court's determination that a change in custody would be in S.W.'s best interests was not clearly against the logic and effect of the facts and circumstances. *See Van Schoyck*, 661 N.E.2d at 5. Therefore, we conclude that the trial court did not abuse its discretion in modifying the custody of S.W. *See id.*

For the foregoing reasons, we affirm the modification of custody.

Affirmed.

RUCKER and STATON, JJ., concur.

---

3. In addition, neither party disputes the fact that this information was not disclosed to the trial court at the time the original dissolution decree was entered.