Mark L. GORMAN, Appellant–
Respondent,

v.

Lisa G. (Gorman) ZEIGLER,
Appellee–Petitioner.

No. 49A02–9707–CV–471.

Court of Appeals of Indiana.

Jan. 21, 1998.

---

Michael G. Ruppert, Ruppert & Schaefer, P.C., Indianapolis, for Appellant–Respondent.

Robert A. Garelick, Jill E. Goldenberg, Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, for Appellee–Petitioner.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mark L. Gorman ("Father") and Lisa G. Gorman, now Ziegler ("Mother"), were

divorced on November 1, 1996. The parties agreed to joint legal custody of their two minor children, Elise and Alan. On February 18, 1997, Mother filed an Emergency Verified Petition for Change of Custody with respect to Elise pursuant to Marion County Family Law Rule 14.[1] After a hearing, the trial court granted Mother's petition, and Father now appeals.

We affirm.

## ISSUES

Father presents several issues for our review which we consolidate and restate as:

1. Whether the trial court erred when it granted Mother's petition for a temporary change in custody.

2. Whether the trial court abused its discretion when it denied Father's Petition for Attorney Fees and Costs.

## FACTS

Father and Mother were married in 1979, and two children were born of the marriage, Elise and Alan. The parties eventually separated, and Mother filed a Verified Petition for Dissolution of Marriage on October 27, 1995. The parties agreed that Mother should be given temporary custody of the children subject to Father's visitation rights. On September 9, 1996, Father filed a Verified Petition for Contempt Citation to Modify Custody alleging that Mother, without leave of court, had moved the children from Indiana to California where she intended to reside permanently. The court ordered that the children be returned immediately to Indiana. The parties later agreed to share joint legal custody of the children, with Father having primary physical custody subject to Mother's visitation rights. The dissolution court approved and entered that agreement on November 1, 1996.

The children began living with Father in early October 6, 1996, at which time Mother returned to California to live with her boyfriend, Steve Zeigler, whom she married in February, 1997. Father's girlfriend, Lisa Allen, and her two children moved in with Father in October, 1996. Thereafter, Elise began showing symptoms of illness and she was eventually diagnosed with a "primitive neuroectodermal brain tumor" ("PNET") on November 12, 1996.[2]

Elise was admitted to Methodist Hospital in Indianapolis and on November 14th, she underwent a "right parietal craniotomy and gross total resection of the tumor." Dr. Michael Turner performed the surgery, after which Elise's care was turned over to Dr. Arthur Provisor, Director of Pediatric Oncology/Hematology at Methodist Hospital, and to radiation oncologist, Dr. David Ross. Elise then underwent chemotherapy with minimal side effects.

Elise was scheduled to receive radiation treatments beginning in the spring of 1997. Mother and Father had met with Dr. Ross in December 1996, to discuss Elise's radiation treatment options, including "Protocol 9931." Protocol 9931 differs from the "standard treatment" in that radiation is given to the patient twice, rather than once, a day for a period of seven or eight weeks. Ross explained that while he had never performed the protocol, he had successfully performed all aspects of the treatment. Mother and Father gave their informed consent to the protocol at that time.

■ Thereafter, Mother developed doubts about the protocol and began to investigate other facilities and protocols. Based on her investigation, Mother decided that she wanted Elise to be treated by Dr. Robert Lavey at Children's Hospital in Los Angeles. She filed her Emergency Verified Petition for Change of Custody in which she alleged that the parties' dispute regarding Elise's treatment constituted an "extreme emergency" as

---

1. To exercise jurisdiction over a petition for custody modification that is filed within a year of the previous custody determination, Marion County Family Law Rule 14 requires the court to find that an "extreme emergency" exists which warrants a custody evaluation.

2. Elise's tumor was located in the right supratentorial area of the right cerebral hemisphere, which is considered a "high risk" location. Record at 282.

required by Marion County Family Law Rule 14.

The court found that Elise's illness in itself had created an extreme emergency and after a hearing, the court granted Mother temporary custody of Elise for the duration of the radiation treatment. The court ordered Mother to return Elise to Indianapolis after treatment where she would reside until a permanent custody determination. The court also granted Father frequent and liberal visitation with Elise, contingent upon evaluation and treatment for his alcohol problem. Finally, the court denied Father's request for attorney fees and costs but ordered Father to pay half of the fee paid to the Dr. John Ehrmann, the child psychologist who evaluated Elise at Mother's request.

**Issue One: Change in Custody**

■ As an initial matter, we note that we have raised the issue of mootness sua sponte. It appeared from the briefs that the issues presented had become moot during the pendency of the appeal. Therefore, we ordered Father to show cause, if any, why the case should not be dismissed. In response, Father averred that Elise has completed radiation treatment but that she is still living in Los Angeles with Mother. We choose to exercise jurisdiction over the appeal because the modification order, although temporary, is still in effect.[3]

Father presents several arguments relating to the trial court's temporary change of custody order. First, he alleges that the court abused its discretion when it exercised jurisdiction over Mother's petition. Specifically, he maintains that the situation did not present an "extreme emergency" under Marion County Family Law Rule 14. Next, he argues that the court abused its discretion when it found that a substantial change in circumstances had occurred which warranted a temporary change in custody. Finally, he argues that the court abused its discretion when it ordered him to receive treatment for his alcohol problem.

**3.** Father also averred in his response that Elise is still living in Los Angeles despite the fact that the court ordered that she be returned to Indianapolis, with her doctor's permission, at the end of her radiation treatment. We cannot examine that issue on appeal. Rather, Father should present the matter to the trial court's attention to

**1.** *Extreme Emergency*

Marion County Family Law Rule 14 provides:

No petition for modification of custody of children, child support or spousal maintenance will be entertained unless a full year has elapsed from the date of the last decision of the court pertaining to custody, support or maintenance, except on a showing by a verified petition requesting a hearing and setting forth in detail that an extreme emergency exists.

The authority of trial courts to adopt local rules, as long as they are not inconsistent with any statute or rule promulgated by our supreme court, is without question. IND. CODE § 34-5-2-2; Ind. Trial Rule 81(A). Father does not argue that Marion County Family Law Rule 14 is inconsistent with statute or supreme court rule. However, we disapprove of Rule 14 in that it purports to limit a trial court's statutory authority to modify custody based upon a substantial change in conditions that affect the child's best interests. See IND.CODE § 31-1-11.5-22; see also Cavazzi v. Cavazzi, 597 N.E.2d 1289, 1294 (Ind.Ct.App.1992) (Miller, J., concurring with opinion) (predecessor to Local Rule 14 is inconsistent with modification statute).

Notwithstanding our disagreement with the local rule, we examine whether Mother demonstrated an extreme emergency. Here, the trial court concluded that Elise's illness in itself created an extreme emergency. The court also stated that "a greater emergency exists in that Elise must commence radiation therapy in mid-April and the parents cannot agree on the radiation oncologist, and Father has not even allowed Mother to obtain a second opinion despite the fact they share joint legal custody."

■ We agree with the court that Elise's serious illness and the parties' dispute over her treatment constituted an extreme emergency.[4] A child's serious illness potentially

insure compliance with the terms of the court's modification order.

**4.** Whether a party has demonstrated that an "extreme emergency" exists is distinct from whether a substantial change in circumstances has occurred which warrants a change in custody. Proof of an extreme emergency is a threshold

alters the child's needs in such a way that a court may exercise jurisdiction over a modification petition to insure that the child's best interests are being served. Thus, the trial court in the present case did not err when it exercised jurisdiction over Mother's modification petition. *See id.* at 1292 (it is within the trial court's discretion to determine the existence of an extreme emergency).

### 2. *Substantial Change in Circumstances*

■ Next, Father argues that the trial court abused its discretion when it concluded that a substantial change in circumstances had occurred which justified a modification of custody. Again, we do not agree.

■ The modification of custody lies within the sound discretion of the trial court. *Dwyer v. Wynkoop*, 684 N.E.2d 245, 250 (Ind.Ct.App.1997), *trans. denied.* Our review is limited to determining whether the trial court abused it discretion in applying the statutory guidelines. *Id.* We may neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Reversal is warranted only upon a showing of a manifest abuse of discretion, that is, when the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.*

■ The trial court in this case entered special findings upon Father's request. We apply a two-tiered standard of review to special findings. First, we determine whether the evidence supports the findings. *Bloodgood v. Bloodgood*, 679 N.E.2d 953, 956 (Ind.Ct.App.1997). Second, we determine whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions thereon. *DeHaan v. De-Haan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App. 1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.*

Indiana Code 31–1–11.5–22 provides in relevant part:

(d) The court may not modify a child custody order unless:

(1) It is in the best interests of the child;

(2) There is a substantial change in one (1) or more of the factors which the court may consider under section 21(a) of this chapter.

(e) In making its determination, the court shall consider the factors listed under section 21(a) of this chapter.

(f) The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described under section 21(a) of this chapter.

IND.CODE § 31–11.5–21(d), (e) and (f) (recodified at IND.CODE § 31–17–2–21(a), (b) and (c)). The factors enumerated by Indiana Code § 31–1–11.5–21(a) are:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;

(5) the child's adjustment to his home, school, and community;

(6) the mental and physical health of all individuals involved; and

(7) evidence of a pattern of domestic violence by either parent.

(recodified at IND.CODE § 31–17–2–8).

Here, the court determined, and we agree, that several of the relevant factors have substantially changed since the original custody determination. In particular, Elise's serious, and possibly fatal, brain tumor constitutes a substantial change in Elise's health. IND. CODE § 31–1–11.5–21(a)(6). Elise's illness has significantly altered her needs and the manner in which her parents must respond to them. Further, the record shows that

question which merely allows the court to exercise jurisdiction over the issue. While proof of

each may overlap, the questions should not be intermingled.

Mother is actively participating in Elise's treatment and care. IND.CODE § 31–1–11.5–21(a)(4).

 In addition, the court did not err when it determined that Mother is in a better position to care for Elise on a full-time basis. IND.CODE § 31–1–11.5–21(a)(4). Mother works only a few hours each month and is available to care for Elise during the day. In contrast, Father works from 7:00 a.m. until 5:30 p.m. Monday through Thursday and until 3:30 p.m. on Friday. If Father were to retain primary physical custody, his girlfriend would be primarily responsible for Elise's daily care. Further, Mother hired a tutor for Elise which allowed her to study during her radiation treatment.[5] Based upon those circumstances, the trial court concluded that Elise's physical and emotional needs would be better met by her Mother. We agree with that conclusion and hold that the trial court did not abuse its discretion when it granted Mother temporary custody.[6]

### 3. Restriction on Visitation

Finally, Father argues that the trial court abused its discretion when it ordered him to receive treatment for his alcohol problem. Again, we do not agree.

Indiana Code § 31–1–11.5–24(a) (recodified at Ind.Code §§ 31–17–4–1 and 31–17–4–2) states that the non-custodial parent is entitled to reasonable visitation rights unless the court finds that "visitation by the parent might endanger the child's physical health or significantly impair his emotional development." Here, Dr. Ehrmann, a psychologist who evaluated the parties, stated in his report to the court that:

> Also of some considerable concern, is that Elise appears to have entered into somewhat of an emotional role reversal with her father. She appears to perceive her father as somewhat at risk, particularly in view of his history of drinking and the problems he has encountered. Elise, much as her

mother, appears to have become a classic enabler for her father. She has cared for Alan in the past when her father has been unavailable or unresponsive.

> The issue of [Father's] alcohol use and abuse is clearly significant. Information from [his former employer] documents that he was offered an opportunity to resign or be terminated. It was suggested to him that he enter into a treatment for alcohol problems. This was well after [Father's] insistence that he had faced and conquered his alcohol related difficulties. [Father] only admitted to a six-month period, in 1995, of having difficulties with alcohol. By his own admission and with further concerns from information provided by Elise and from his psychological testing, [Father] may indeed be an impaired individual and further evaluation is recommended.

Father admitted that he has two to four drinks, two to three times a week. Elise stated that he is drinking less than he once did, but Dr. Ehrmann's report indicates that Father's past and current drinking has had a profound effect on the way in which Elise relates to him. The court reasonably concluded that Father's drinking could have a detrimental effect on Elise's emotional development. Further, the record indicates that he agreed to such treatment during the modification hearing. Based on the foregoing, the court acted well within its discretion when it ordered Father to receive treatment.

### Issue Two: Attorney Fees and Costs

Finally, Father argues that the trial court abused its discretion when it ordered, without entering special findings, each party to pay its own attorney fees and to divide equally Dr. Ehrmann's fee. Specifically, he maintains that the court abused its discretion because Father earns $54,000.00 per year, while Mother's husband earns over $200,-000.00 per year. We disagree with Father's contention.

---

5. Radiation may cause severe side effects which will prevent Elise from regularly attending school.

6. Mother correctly notes that the court is not required to find that the existing custody order is unreasonable in order to modify custody. Stated differently, existing custody need not be detrimental to the child for a change in custody to be in the child's best interest.

The award or denial of attorney fees is "in the exercise of sound discretion, and in the absence of an affirmative showing of error or abuse of discretion, we must affirm the trial court's order." *Malachowski v. Bank One, Indianapolis, N.A.*, 682 N.E.2d 530 (Ind. 1997). Indiana adheres to the American Rule which requires the parties to pay their own attorney fees absent an agreement, statute or rule to the contrary. *Wernke v. Halas*, 600 N.E.2d 117, 123 (Ind.Ct.App.1992). We are not persuaded that the trial court abused its discretion when it followed the presumptive American rule and ordered the parties to pay their own attorney fees. The disparity between the parties' resources does not, in itself, compel reversal. Further, the court acted well within its discretion when it ordered Father to pay half of Dr. Ehrmann's fee.

Affirmed.

BAKER and RILEY, JJ., concur.