**Michelle A. (Davis) WIGGINS,
Appellant–Petitioner,**

v.

**David A. DAVIS, Appellee–Respondent.**

**No. 48A02–0004–CV–271.**

Court of Appeals of Indiana.

Oct. 30, 2000.

William Byer, Jr., Byer & Byer, Anderson, Indiana, Attorney for Appellant.

Patrick R. Ragains, Smith & Ragains, Anderson, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellant-petitioner Michelle A. Wiggins appeals the trial court's modification of child custody in favor of appellee-respondent David A. Davis. Specifically, she contends that the trial court erred in 1) admitting evidence of events that occurred before the dissolution decree was entered, 2) admitting evidence of events that occurred after filing an emergency order but before the final evidentiary hearing, and 3) finding sufficient evidence to order a custody modification.

### FACTS

The facts most favorable to the judgment show that on April 16, 1998, Wiggins filed a petition for dissolution of her marriage to Davis. Both Wiggins and Davis requested temporary custody of their two minor children, S.D. and D.D. Less than a month later, the trial court entered a preliminary order granting joint custody and directing that Wiggins would have primary custody over S.D. while Davis would have primary custody over D.D.

In October 1998, during the pendency of the dissolution action, Davis petitioned the trial court to transfer to him temporary emergency custody of S.D. At a hearing held pursuant to his petition, Davis presented evidence that: 1) Wiggins left S.D. alone without adult supervision while she worked; 2) S.D. was molested by his twelve-year-old half-brother while left by Wiggins without adult supervision; and 3)

S.D. was often dirty and wore filthy clothes. Record at 122–23, 130–31, 136, 147. At the hearing's conclusion, the trial court denied Davis's petition.

Several months later, in April 1999, Wiggins and Davis entered into a written dissolution agreement, which the court adopted in a summary dissolution decree. The agreement provided that Wiggins and Davis would have joint custody over S.D. and D.D., with Wiggins responsible for primary custody of S.D. and Davis responsible for primary custody of D.D. R. at 69. On May 20, 1999, Davis filed a petition seeking an emergency order to transfer primary custody of S.D. to him. Attached to Davis's petition was a Madison County Police Department initial case report dated May 12, 1999. The report alleged that Wiggins's twelve-year-old son from a previous marriage was molesting both S.D. and D.D. R. at 74. The trial court, accordingly, transferred primary custody of S.D. to Davis and allowed Wiggins supervised visitation only.

After another several-month interval, on January 6, 2000, an evidentiary hearing was held to determine whether Davis should receive permanent custody of S.D. and D.D. During the January 2000 hearing, Davis began to testify about events that occurred before the October 1998 hearing. Wiggins promptly objected to any testimony about events that occurred prior to the April 1999 divorce decree. The trial court initially sustained the objection but changed its ruling after a discussion of caselaw addressing the custody modification statute. Davis then testified to molestation occurring before and after the April 1999 divorce decree. Davis also testified that, before the April 1999 divorce decree, Wiggins would leave the children alone while she worked third shift. He further testified that, when left in Wiggins's care, S.D. was generally dirty. The trial court also heard testimony that S.D.'s physical and emotional health had improved since the May 1999 emergency transfer of custody. On March 21, 2000,

the trial court found that a change in custody was necessary and awarded Davis custody of both children. Wiggins now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

Initially we set out the standard of review of the trial court's custody determination. A child custody determination falls within the sound discretion of the trial court, and we will not disturb its determination unless there is a showing of abuse of discretion. *Bowman v. Bowman,* 686 N.E.2d 921, 925 (Ind.Ct.App.1997). We are reluctant to reverse a trial court's determination concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence. *Id.* We do not reweigh evidence nor reassess witness credibility on review. *D.W.S. v. L.D.S.,* 654 N.E.2d 1170, 1174 (Ind.Ct.App.1995). We will consider only the evidence and reasonable inferences drawn therefrom that are most favorable to the trial court's judgment. *Id.* Stated differently, a party may not base her claim of abuse of discretion on the trial court's failure to accept her version of the facts. *Id.*

#### II. Wiggins's Claims

##### A. Evidence of Events Occurring Before Entry of the Dissolution Decree

Wiggins first contends that the trial court erroneously admitted evidence regarding events that occurred before the April 1999 dissolution decree was issued. Specifically, Wiggins asserts that the trial court was not permitted to hear any evidence that it heard during the October 1998 custody proceeding.

The latest amended version of the custody modification statute governs the instant dispute.[1] Under I.C. § 31–17–2–21, a court may not modify a custody order unless:

(1) the modification is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 . . . of this chapter.

(b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

(c) The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described by section 8 . . . of this chapter.

The custody modification statute refers to the eight factors used to determine the best interests of the child, which are outlined in IND.CODE § 31–17–2–8. The relevant factors are:

(4) The interaction and the interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

---

**1.** We note that the latest amendment to IND. CODE § 31–17–2–21 became effective on July 1, 1999. Davis filed his petition to modify child custody before that amendment's effective date. However, the evidentiary hearing on Davis's petition occurred after the effective date of the statutory amendment. This court has held that an amendment to a custody modification statute is the controlling authority for a custody modification hearing taking place after the amendment's effective date irrespective of whether the custody modification petition was filed before the amendment's effective date. *See Van Schoyck v. Van Schoyck,* 661 N.E.2d 1, 5 (Ind.Ct.App.1996).

(7) Evidence of a pattern of domestic violence by either parent.

*Id.*

Davis argues that *Dwyer v. Wynkoop* controls the instant case. 684 N.E.2d 245 (Ind.Ct.App.1997). In *Dwyer*, a divorcing couple stipulated, having waived a final dissolution hearing, that the mother would have physical custody of their minor child. *Id.* at 246. A year and a half later, the father filed for emergency temporary custody, alleging that the mother had attempted to commit suicide. During a subsequent custody modification hearing, the father raised evidence of the mother's psychological condition predating the dissolution decree. We held that the evidence of events predating the dissolution decree did not violate the custody modification statute, which provides that "[t]he court shall not hear evidence on a matter occurring *before the last custody proceeding* between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described by section 8 ... of this chapter." I.C. § 31–17–2–21(c) (emphasis supplied). Evidence of the mother's previous psychological condition was admissible because there had not been a custody proceeding to determine custody. In other words, the trial court was permitted to hear the evidence because it came to the trial court's attention for the first time pursuant to a custody modification hearing. *Id.* at 249.

Davis, relying on *Dwyer*, argues that subsection (c) of the modification statute is inapplicable because the parties stipulated to joint custody and "there was never a full blown custody proceeding." Appellee's brief at 7. Inasmuch as the parties litigated custody of S.D. at the October 1998 emergency custody modification hearing, *Dwyer* is inapposite. Here the trial court heard most of the evidence of molestation and neglect, first presented at the October 1998 hearing, at the January 2000 hearing.

We observe the qualifying language of the custody modification statute, which generally bars hearing evidence on a matter occurring before the last custody proceeding "*unless the matter relates to a change in the factors* relating to the best interests of the child." I.C. § 31–17–2–21(c) (emphasis supplied). The primary goal in interpreting the meaning of a statute is to determine and effectuate the legislative intent. *Woods v. State,* 703 N.E.2d 1115, 1117 (Ind.Ct.App.1998). To determine the legislative intent, courts must consider the statute's objectives and the purposes and the consequences of the statute's interpretation. *Miller v. State,* 641 N.E.2d 64, 68 (Ind.Ct.App.1994). We look to the plain language of the statute and attribute the common, ordinary meaning to terms found in everyday speech. *Woods,* 703 N.E.2d at 1117. In determining the plain and ordinary meaning of a statutory term, courts may use English language dictionaries and consider the relationship with other words and phrases. *State v. Eilers,* 697 N.E.2d 969, 971 (Ind.Ct.App. 1998). Here, to "relate" is defined as "[t]o have connection, relation or reference." *The American Heritage Dictionary of the English Language* 1097 (1978).

Applying this definition to the instant dispute, we note that evidence of molestation and neglect was admitted at the October 1998 hearing. This same evidence was readmitted at the January 2000 hearing along with evidence of molestation and neglect postdating the October 1998 hearing. R. at 74. We determine that the previously admitted evidence of molestation and neglect was properly admitted because it had a connection to the change in factors "relating to the best interests of the child." I.C. § 31–17–2–21(c). Evidence of molestation by S.D.'s half-brother, which predated the October 1998 hearing, had a connection to evidence of subsequent molestation by the same half-brother. Moreover, evidence of Wiggins's neglect, which predated the October 1998 hearing, had a connection to evidence of Wiggins's subsequent neglect.

A court may consider evidence of ongoing molestation and neglect in determining the best interests of the child by using factors outlined in I.C. § 31–17–2–8. Evidence of molestation by S.D.'s half-brother continuing after the October 1998 hearing constitutes a substantial change in S.D.'s "interaction and interrelationship" with his siblings. I.C. § 31–17–2–8(4)(B). In modifying custody, however, the court must find a substantial change in one of the statutory factors *and* that a change in custody would be in the best interests of the child. We address evidence regarding S.D.'s best interests below.

### B. Evidence Postdating the May 1999 Emergency Custody Order

Wiggins next contends that the trial court erred in allowing evidence of S.D.'s improved physical and emotional health under Davis's custody. Specifically, she argues that admitting evidence of S.D.'s improved condition under Davis's custody is a " 'back door' way of re-litigating the initial custody determination." Appellant's brief at 14.

In *Joe v. Lebow*, we determined that evidence of a child's improving condition, while under the temporary emergency custody of the noncustodial parent, was admissible. 670 N.E.2d 9, 23 (Ind.Ct.App. 1996). A child's improving condition is part of a trial court's consideration of the child's best interests. *Id.* However, evidence of a child's improving condition cannot fall within the trial court's consideration of a "substantial change" in one of the statutory factors. In other words, without independent evidence of a substantial change in the custodial parent's home, evidence of a child's improving condition with the noncustodial parent will not by itself support a custody modification. *See id.*

Here, Davis presented evidence that S.D.'s condition and general well-being had improved since the May 1999 transfer of custody to him. More specifi-

cally, evidence showed that S.D.'s cleanliness and manners significantly improved and that he appeared happier. R. at 296, 318–20, 335–37. We conclude that this evidence was admissible, under *Joe v. Lebow*, to prove that a change in custody was in S.D.'s best interests.

### C. Sufficiency of the Evidence

Wiggins's final contention is that there was insufficient evidence to warrant a custody modification. In light of our discussion above along with evidence establishing ongoing molestation and neglect, we cannot say that the trial court erred in awarding custody of S.D. to Davis.

### CONCLUSION

In conclusion, we determine that the trial court properly 1) admitted evidence of events occurring before the October 1998 custody proceeding, 2) admitted evidence of S.D.'s improved condition subsequent to the May 1999 transfer of custody, and 3) found sufficient evidence on which to base a custody modification.

Judgment affirmed.

SHARPNACK, C.J., and VAIDIK, J., concur.