Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 13 2015, 10:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK A. DUFF**
Duff Law, LLC
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**KAREN M. HEARD**
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE MATTER OF THE , )
PATERNITY OF: )
A.M. )
BY NEXT FRIEND, )
E.D.A. )
                                            )
Appellant                             )        No. 82A01-1402-JP-055
                                            )
          vs.                             )
                                            )
B.K.S., )
                                            )
          Appellee.                  )

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable James M. Redwine, Judge
Cause No. 82D01-1103-JP-164

**January 13, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

E.A. (Mother) appeals from the trial court's order awarding physical custody of the parties' five-year-old daughter, A.S.[1] (Child) to B.S. (Father) and denying Mother's petition to relocate. She presents the following restated issues:

1. Did the trial court abuse its discretion by admitting evidence of facts existing before the entry of the previous custody order?

2. Did the trial court abuse its discretion in denying Mother's petition for permission to relocate?

3. Did the trial court abuse its discretion by modifying custody?

We affirm.

Mother and Father met in 2008 when Father, an attorney, represented Mother in a criminal matter. Mother and Father dated briefly in April 2008, and the relationship resulted in the birth of Child in December 2008. At one point during Mother's pregnancy, Father sent Mother an email asking her due date. Mother responded that she had already taken a test and that the baby was not Father's.[2] This was not true.

When Child was approximately two years old, Mother contacted Father and informed him that Child was his. Father immediately began visitation with Child and paid for and underwent DNA testing, which confirmed that he was Child's father. In June 2011, the parties entered into an agreement regarding custody and parenting time, which was accepted by the trial court. Pursuant to the order, the parties had joint legal and physical custody, with Mother designated as the primary physical custodian.

---

[1] Although the parties refer to child as A.M. in their captions, the record reflects that Child's last name has been changed to Father's, and her initials are now A.S.

[2] At trial, Mother insisted that she had not sent this response and that the email address did not belong to her. The trial court found that Father's evidence, which included copies of Mother's resumes and job applications bearing the email address in question, refuted Mother's claim.

2

On November 20, 2012, Father filed a petition to modify custody in which he requested full legal and physical custody of Child, with Mother to have parenting time pursuant to the Indiana Parenting Time Guidelines. On August 2, 2013, while the petition to modify remained pending, Mother filed a notice of intent to relocate, in which she indicated that she was engaged to be married and planned to move to St. Louis with Child to reside with her soon-to-be husband. Father filed a timely objection, in which he again requested custody of Child, and the parties participated in mediation. Mother and Father were unable to reach an agreement, and an evidentiary hearing was scheduled.

The hearing was held on November 21 and December 17, 2013. At the hearing, extensive evidence was presented concerning Mother's habitual patterns of dishonesty and their impact on Child's living situation. For example, shortly after Child was born, Mother married Jeremy Calvert. Less than one month after the wedding, Calvert filed for an annulment, claiming that the marriage had been based on a misrepresentation of facts. Calvert testified that he was unaware when he married Mother that she had a criminal record, and that Mother had falsely stated that she was an accountant or CPA. The marriage was eventually dissolved.

Shortly after returning from her honeymoon with Calvert, Mother was arrested on pending criminal matters. She was ultimately ordered to serve ninety days in jail for lying to the court. During this time, Child stayed with Mother's parents because Mother had not yet informed Father of his paternity.

Mother also has a history of misrepresenting her experience, credentials, and criminal history on resumes and job applications. She was fired from at least one job for

3

lying about her qualifications and using a false social security number. Mother testified that she had a job waiting for her in St. Louis, but stated that she would be ineligible for the job if she had any felony convictions. Mother testified that she had never been convicted of a felony, when in fact, she has six felony convictions.

Evidence was also presented that Mother routinely lied about Child's paternity. Mother told Calvert that Child's father was Shawn Bennett, a man she had previously dated. She told coworkers that Child's father was her current husband, Colin Austin. Mother told Austin that Calvert was Child's father. When the Guardian ad Litem (GAL) asked Austin about Father, Austin did not recognize Father's name and asked if the GAL was using an alias for Calvert, who Austin believed to be Child's father. During the conversation, Austin apparently contacted Mother, because he then stated that Mother had just told him that Father was actually Calvert's father and sometimes picked Child up for Calvert's visits. The GAL also indicated that when she first met Child and attempted to talk to her about Halloween, Child told her that they "don't need to talk about that" and that they needed to talk about her "2 dads", one of whom was "nice" and the other "mean." *Appellee's Appendix* at 2. Father testified that he had heard Child repeat negative things Mother had said about him. Additionally, evidence was presented that Mother continued to use Child's previous last name even after it was changed to Father's last name.

There was also evidence that Mother misrepresented Child's health status to Father. On one occasion, when Child was hospitalized, Mother told Father that Child was out of town. Additionally, Mother told Father that Child was allergic to shellfish and

4

nuts, which Father later discovered to be untrue. Evidence was also presented that Child had attended five different daycares prior to turning five years old.

The evidence presented at the hearing established that Father has worked as an attorney for seventeen years and lives in a home on the north side of Evansville with his girlfriend of over four years. Father's fourteen-year-old son (Son) from a previous relationship lives with him fifty percent of the time, and Father has maintained an amicable and communicative relationship with Son's mother. Child has close relationships not only with her parents, but also with Son, her paternal and maternal grandparents, and Father' girlfriend, all of whom live in the Evansville area.

On January 7, 2014, the trial court issued a written order denying Mother's request to relocate Child and granting Father's request for full physical custody, but maintaining the parties' joint legal custody arrangement. Mother now appeals.

Where, as here, the trial court enters special findings of fact and conclusions thereon pursuant to Trial Rule 52(A), we apply a two-tiered standard of review. *In re Paternity of C.S.*, 964 N.E.2d 879 (Ind. Ct. App. 2012), *trans. denied*. First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The trial court's findings and conclusions will be set aside only if they are clearly erroneous—that is, where a review of the record leaves us with a firm conviction that a mistake has been made. *In re Paternity of D.T.*, 6 N.E.3d 471 (Ind. Ct. App. 2014). In conducting our review, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Instead, we will consider only the evidence favorable to the trial court's judgment. *Id.*

5

1.

Mother first argues that the trial court abused its discretion by admitting evidence concerning facts existing before the entry of the prior custody order. This court reviews a trial court's admission of evidence for an abuse of discretion. *In re Paternity of H.R.M.*, 864 N.E.2d 442 (Ind. Ct. App. 2007). A trial court abuses its discretion when its decision is clearly erroneous, or against the logic and effect of the facts and circumstances before it. *Id.*

Mother argues certain evidence was inadmissible because it related to facts and conditions existing before the entry of the previous custody order. As an initial matter, we note that Mother did not object at trial to the admission of some of the complained-of evidence on the basis she now asserts on appeal. For example, Mother objected to Father's Exhibit P on the basis that it had not been provided during pretrial discovery, and she objected to Father's Exhibits M and U on foundational grounds. It is well settled that a party may not object to the admission of evidence on one basis at trial and assert a different basis on appeal. *See Francies v. Francies*, 759 N.E.2d 1106, 1113 (Ind. Ct. App. 2001) (explaining that a "party may not object based upon one ground at trial and argue a different basis upon appeal"), *trans. denied*. Moreover, Mother did not object to the admission of Father's Exhibit Q at all, and she stipulated to the admission of Father's Exhibit AA. Her arguments concerning the admissibility of these exhibits are therefore waived. *See id.* (explaining that "[f]ailure to object at trial results in waiver of the issue upon appeal").

To the extent Mother has preserved her claims of error regarding the remaining exhibits and testimony, they are without merit. Ind. Code Ann. § 31-14-13-9 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), provides as follows:

> In a proceeding for a custody modification, the court may not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described in section 2 and, if applicable, section 2.5 of this chapter.

In *Dwyer v. Wynkoop*, 684 N.E.2d 245, 249 (Ind. Ct. App. 1997), *trans. denied*, this court interpreted nearly identical language appearing in the dissolution statutes and reasoned as follows:

> [B]ecause this section refers to "the last custody proceeding," it does not necessarily apply to situations where custody was originally determined solely by stipulation of the parents without further inquiry by the trial court. This provision simply illustrates the principle of res judicata which prevents unnecessary relitigation of issues that have been previously litigated. This principle seems especially significant in light of the particularly disruptive effect that relitigation of custody matters may have on the parties involved. Therefore, when parents stipulate as to who will have custody of the child and the trial court grants a summary dissolution on the basis of such agreement without hearing evidence on the issue of custody, there is no "custody proceeding" that would activate this section of the statute. Thus, this section does not apply to situations where custody was originally determined solely by stipulation of the parties.

(citations omitted). Thus, the court held that "when material information related to one of the statutory factors comes to the attention of the trial court for the first time while evaluating a petition for modification for custody, such new information may constitute a substantial change in that factor for the purposes of the modification statute." *Id.*

7

In this case, as in *Dwyer v. Wynkoop*, custody was originally established by an agreed order, and no contested hearing was held until the instant motions were filed. Accordingly, the statute precluding consideration of circumstances existing at the time of the prior custody order is inapplicable. To the extent Mother argues that consideration of such evidence offends common law principles of res judicata, we note that in *Dwyer v. Wynkoop*, this court explained that "we do not find that the consideration of critical information about the child's current circumstances previously unknown to the trial court constitutes relitigation of a previous custody determination, especially when custody was stipulated to by the parties[.]" *Id.*

Moreover, I.C. § 31-14-13-9 contains an exception allowing the consideration of circumstances existing before the previous custody order where such evidence is related to a change in the statutory factors relating to the best interests of the child set forth in I.C. § 31-14-13-2 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). I.C. § 31-14-13-2 provides that the court "shall consider all relevant factors," including, among other things, the child's adjustment to home, school, and community and the child's interrelationship with his or her parents and siblings. In this case, the complained-of evidence was relevant to show Mother's long-standing pattern of dishonesty, which the trial court found has led to instability in Child's life and jeopardized the Child's relationships with Father and other family members. Accordingly, the evidence "relate[d] to a change in the factors relating to the best interests of the child[.]" I.C. § 31-14-13-9. *See also Parks v. Grube*, 934 N.E.2d 111, 117 (Ind. Ct. App. 2010) (finding no

8

error in the consideration of facts occurring before previous custody order because the evidence was considered "in the context of its *continuing effect* on the Children" (emphasis in original)); *Wiggins v. Davis*, 737 N.E.2d 437, 441 (Ind. Ct. app. 2000) (finding no error in consideration of events occurring before the previous custody order because the events "had a connection to" subsequent events).  For all of these reasons, the trial court did not err in considering evidence of circumstances existing prior to the entry of the agreed custody order.

2.

Mother next argues that the trial court abused its discretion in denying her request to relocate with Child.  Pursuant to I.C. § 31-14-13-10 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), if an individual who has been awarded custody or parenting time in a paternity action intends to move his or her residence, the individual must file a notice of intent with the trial court clerk and send a copy of the notice to each non-relocating individual in accordance with Ind. Code ch. 31-17-2.2.  If the non-relocating parent does not file a motion to prevent relocation, the relocating parent who has custody of the child may relocate.  Ind. Code Ann. § 31-17-2.2-5 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).  Where, as here, the non-relocating parent files a motion to prevent relocation, the relocating parent must first prove "that the proposed relocation is made in good faith and for a legitimate reason."  *Id.*

9

If the relocating parent makes such a showing, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." *Id.*

I.C. § 31-17-2.2-1(b) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) provides in relevant part as follows:

> (b) Upon motion of a party, the court shall set the matter [of a relocating individual's intent to move] for a hearing to review and modify, if appropriate, a custody order . . . . The court shall take into account the following in determining whether to modify a custody order . . . :
>
> (1) The distance involved in the proposed change of residence.
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.
> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
> (5) The reasons provided by the:
>     (A) relocating individual for seeking relocation; and
>     (B) nonrelocating parent for opposing the relocation of the child.
> (6) Other factors affecting the best interest of the child.

The "[o]ther factors affecting the best interest of the child" include, by implication, the applicable factors set forth for custody determinations and modifications, which, for paternity actions, are codified at I.C. § 31-14-13-2 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). *See T.L. v. J.L.*, 950 N.E.2d 779 (Ind. Ct. App. 2011).

I.C. § 31-14-13-2 provides that the court "shall consider all relevant factors," including specifically the following:

> (1) The age and sex of the child.
> (2) The wishes of the child's parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>> (A) the child's parents;
>> (B) the child's siblings; and
>> (C) any other person who may significantly affect the child's best interest.
> (5) The child's adjustment to home, school, and community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

In this case, the trial court made no finding that Mother's request to relocate was not made in good faith or for a legitimate reason. Instead, the trial court found that the relocation was not in Child's best interests. Mother asserts that the trial court did not consider the necessary statutory factors in making this ruling. To the contrary, the trial court's findings make it amply clear that it considered the appropriate factors. Not only did the trial court cite the statutory provisions,[3] but it also made specific findings incorporating their language. With respect to I.C. § 31-17-2.2-1(b), the trial court found that the move would not allow Father to exercise parenting time in the same manner he

---

[3] We note that the trial court mistakenly cited I.C. § 31-17-2-8 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), which applies to custody decisions in dissolution actions. The statutes governing child custody in paternity proceedings are found in Article 14 of Title 31. Although the citation to I.C. § 31-17-2-8 is technically incorrect, the error is of no consequence here because I.C. § 31-17-2-8 and I.C. § 31-14-13-2 are identical in substance, and nearly so in wording.

11

had previously and that Mother demonstrated a pattern of thwarting Father's contact with Child. The trial court also made findings with respect to other factors affecting Child's best interests, including specifically the negative impact the move would have on Child's relationships with Son and with both sets of grandparents, Child's adjustment to her home, school, and community, and the fact that Mother was ineligible for the job she claimed was waiting for her in St. Louis due to her multiple felony convictions. Mother's argument that the trial court failed to consider the appropriate factors is without merit.

Next, Mother challenges some of the trial court's specific findings. With respect to the trial court's findings concerning Mother's statement that she had no felony convictions and would not be eligible for the job waiting for her in St. Louis if she did, Mother claims that she "believed she was charged with a felony that had been reduced to a misdemeanor" and that "[t]his is nothing more than honest oversight." *Appellant's Brief* at 20. Given that Mother has six felony convictions in two different counties, her assertion in this regard strains credulity, and, in any event, is nothing more than a request to reweigh evidence. Nor was the trial court obligated to credit or attribute significant weight to Mother's testimony that Austin's income was sufficient to support Mother and Child in the event that Mother lost her job.

Mother also takes issue with the trial court's finding that relocation would negatively impact Child's relationships with Son and both sets of her grandparents. For the most part, Mother does not dispute the accuracy of the finding, but instead argues that the trial court should have attributed more weight to the fact that Mother "is and has been the only consistent thing in the minor child's life since her birth." *Id.* at 20. This is

simply a request to reweigh the evidence. Moreover, even if Mother's assertion in this regard is true, it is attributable in significant part to the instability in Mother's life and the fact that Mother initially lied to Father about his paternity and did not tell him the truth until Child was approximately two years old. Since Mother informed Father of his paternity, he and his family have become an important and positive part of Child's life. Mother also notes that her parents testified that they did not feel that the relocation would impact their relationship with Child because St. Louis is not that far away and they would continue to see her regularly. The trial court was not obligated to credit the maternal grandparents' testimony in this regard, particularly in light of their obvious motivation to provide support for their daughter. Moreover, Mother's father testified that St. Louis is two and one-half hours away from Evansville. Mother's father testified further that he visits with Child two or three days per week during the summer. It is difficult to imagine that such a distance would have no impact on the maternal grandparents' relationship with Child.

Mother also challenges the trial court's finding that Mother exhibited a consistent pattern of attempting to thwart Father's relationship with Child. Mother notes that the trial court found that Mother does not allow Father additional parenting time. Again, she does not seem to dispute the trial court's findings, but instead argues that Father does not allow her additional parenting time either, and that he did not honor the right of first refusal set forth in the initial agreed custody order. Again, this is a request to reweigh the evidence. Moreover, the testimony concerning additional parenting time was not the only evidence supporting the trial court's finding in this regard. Mother lied to Father about

his paternity and did not inform him that he was Child's father until Child was approximately two years old, and Mother has lied to several other people concerning Child's paternity. The evidence also indicated that Mother has lied to Father about Child's medical condition, going so far as to tell him that Child was out of town when she was in fact hospitalized. Mother has also refused to refer to Child by Father's last name, and Father has heard Child repeat negative things Mother says about Father. The trial court's finding that Mother has acted to thwart Father's relationship with Child was not clearly erroneous. For all of these reasons, the trial court's ultimate finding that relocation to St. Louis was not in Child's best interests was not an abuse of discretion.

3.

Mother also argues that the trial court abused its discretion when it modified physical custody in Father's favor.[4] Our standard of review is well settled:

> When reviewing a custody determination, we afford the trial court considerable deference as it is the trial court that observes the parties' conduct and demeanor and hears their testimonies. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945–46 (Ind. Ct. App. 2006). We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011) (quoting *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009)), *trans. denied*. We will not reweigh the evidence or judge the credibility of witnesses. *Kondamuri*, 852 N.E.2d at 946. Rather, we will reverse the trial court's custody determination based only upon a trial court's abuse of discretion that is "clearly against the logic and effect of the facts and circumstances or

---

[4] Mother addresses the questions of custody modification and the denial of her request to relocate as a single issue. We note, however, that Father's petition to modify custody predated Mother's request to relocate, and the trial court awarded Father sole physical custody of Child even if Mother chose not to move to St. Louis as planned. Because the trial court's custody ruling was not dependent on Mother's request to relocate, we address the issue separately. There is, of course, some overlap between the facts relevant to our analysis on both issues.

14

the reasonable inferences drawn therefrom." *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *Brickley v. Brickley*, 247 Ind. 201, 210 N.E.2d 850, 852 (1965)).

*In re Paternity of C.S.*, 964 N.E.2d at 883.

Pursuant to I.C. § 31-14-13-6 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), a trial court may modify a child custody order only upon a showing that modification is in the child's best interests and that there has been a substantial change in one or more of the factors that the court may consider under I.C. § 31-14-13-2.

Mother's argument with respect to the trial court's decision to modify custody is premised entirely on her assertion that the court improperly considered evidence relating to matters occurring prior to the agreed custody order, which we have already rejected. In this case, the trial court made findings concerning Mother's habitual lying and its impact on Child. Specifically, the trial court found that "[t]he impact of [Mother's] untruthfulness was that the Mother's life was and is often unstable and that [Child's] relationships with Father, her brother, Father's family, and Father's long-time girlfriend . . . [are] being jeopardized." *Appellant's Appendix* at 69-70. This finding is supported by the evidence. Mother's marriage to Calvert ended as a direct result of her untruthfulness, and the evidence presented at the hearing establishes that she has continued her pattern of dishonesty in her current marriage by lying to her husband about the identity of Child's father. Mother has repeatedly lied to multiple people concerning the identity of Child's father, and she initially lied to Father about his paternity. Mother has also lied to Father

15

concerning Child's medical issues, and she was incarcerated for ninety days for lying to the criminal court. Additionally, Mother has lied on her applications for several jobs, and she has been fired from at least one job as a direct result of those lies. According to Mother's own testimony, her multiple felony convictions render her ineligible for the job she claims is waiting for her in St. Louis. Moreover, Child has attended five different day cares and/or preschools while in Mother's custody, and Mother has refused to use Child's legal name after it was changed.

The trial court did not abuse its discretion by considering evidence of Mother's ongoing pattern of dishonesty to be a predictor of her future dishonesty and instability, nor did it err in finding that Mother has impeded Father's involvement in Child's life. Since establishing paternity, Father has developed a strong relationship with Child and demonstrated his ability and desire to provide a stable, healthy, and nurturing home for her. Under the facts and circumstances of this case, we conclude that the trial court's findings that there has been a substantial change in the relevant factors relating to Child's best interests and that modification of custody was in Child's bests interests were supported by the evidence.

Judgment affirmed.

KIRSCH, J., and CRONE, J., concur.